IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

No. 3:20-cv-00045-NKM

| | |
|---|---|
| WILD VIRGINIA, VIRGINIA WILDERNESS COMMITTEE, UPSTATE FOREVER, SOUTH CAROLINA WILDLIFE FEDERATION, NORTH CAROLINA WILDLIFE FEDERATION, NATIONAL TRUST FOR HISTORIC PRESERVATION, MOUNTAINTRUE, HAW RIVER ASSEMBLY, HIGHLANDERS FOR RESPONSIBLE DEVELOPMENT, DEFENDERS OF WILDLIFE, COWPASTURE RIVER PRESERVATION ASSOCIATION, CONGAREE RIVERKEEPER, THE CLINCH COALITION, CLEAN AIR CAROLINA, CAPE FEAR RIVER WATCH, ALLIANCE FOR THE SHENANDOAH VALLEY, and ALABAMA RIVERS ALLIANCE, <br><br>Plaintiffs, <br><br>v. <br><br>COUNCIL ON ENVIRONMENTAL QUALITY and MARY NEUMAYR IN HER OFFICIAL CAPACITY AS CHAIR OF THE COUNCIL ON ENVIRONMENTAL QUALITY, <br><br>Defendants. | **REPLY IN SUPPORT OF MOTION FOR EXPEDITED BRIEFING AND RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION OF TIME** |

On July 15, 2020, Defendant Council on Environmental Quality ("CEQ") issued a rulemaking that the President declared a "top-to-bottom overhaul" of National Environmental Policy Act ("NEPA")[1] regulations that have been in place for over forty years.  CEQ announced that its new regulations ("the Rule") will go into effect on September 14, 2020 and will apply to not only new projects but also to existing projects that are already under review: "An agency may apply the regulations in this subchapter to ongoing activities and environmental documents *begun before September 14, 2020.*"  40 C.F.R. § 1506.13 (2020) (emphasis added).

Now CEQ seeks to put its new Rule into action before this Court has an opportunity to maintain the status quo under the existing regulations. CEQ has not suggested that there is any harm to the government from a modest delay in implementing the new Rule while the Conservation Groups' challenge is resolved on the merits—nor could it, given the long-standing stability of the current regulations.  CEQ then, attempts to eliminate the existing regulations before any opportunity for judicial review and change the status quo—presumably later to argue that a preliminary injunction is inappropriate because the new Rule already will have already gone into effect.  The Conservation Groups' request for an expedited resolution of their motion is reasonable in light of the impending effective date CEQ has imposed and the fact that CEQ has made clear in the Rule—though not in its opposition brief—that it intends the Rule to apply retroactively to ongoing projects.  This retroactive application makes the need to postpone the Rule's harmful effects even more pressing.

CEQ complains that the Conservation Groups' brief is extensive and supported by documentation of the numerous, concrete harms they imminently face when the Rule goes into

---

[1] Remarks on Proposed National Environmental Policy Act Regulations, (July. 15, 2020) (President Trump Remarks), *available at* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-rebuilding-americas-infrastructure-faster-better-stronger-atlanta-ga/.

effect. Dkt. 31 at 1-2. The Conservation Groups are simply responding to a rulemaking that is "unprecedented" in its deregulatory scope and alters almost every aspect of the longstanding regulations on which the Conservation Groups rely.[2] The harm is so extensive and widespread that the Conservation Groups were bound to document the myriad ways throughout the country in which it is already impacting the seventeen Conservation Groups in this case and will continue to do so.

CEQ tells the Court it is poised within days to file a motion to dismiss the Conservation Groups' challenge in which it will argue that the Rule will not cause "any current harm whatsoever" and that no challenge to its rulemaking is possible. Dkt. 31 at 3. This argument is meritless, but as CEQ candidly admits, it is one the agency will recycle in opposing a preliminary injunction or stay. *Id.* at 3-4. Indeed, CEQ is already presenting its response to the Conservation Groups' request for a preliminary injunction here. *Id.* at 2-3. With its motion to dismiss already on the cusp of being filed, CEQ has no valid basis to object to using those same arguments to oppose the Conservation Groups' motion in a timely fashion so that the motion can be resolved before the Rule goes into effect.

That being said, CEQ's argument is wrong. It clumsily forecasts the reason that the Conservation Groups are likely to prevail on the merits. CEQ claims it does not know if its drastic procedural changes will influence environmental outcomes. Dkt. 31 at 3. In other words, the agency responsible for overseeing implementation of the "Magna Carta of environmental law" is making the astonishing claim that *NEPA doesn't matter*. But this is in stark contrast to the courts' consistent recognition that procedural shortcuts do increase environmental risk, *e.g.*, *Sierra Club v. Marsh*, 872 F.2d 497, 500-01, 504, because NEPA's "procedures are almost

---

[2] *Id.*

certain to affect the agency's substantive decision." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

Moreover, NEPA has long been understood to have the twin aims of *informing* the decisionmaker, and *informing* the public to stimulate participation and ensure accountability. *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 768 (2004) (describing an EIS as intended to "provid[e] a springboard for public comment" (alteration in original) (quoting *Robertson*, 490 U.S. at 349)); *New Mexico. ex rel. Richardson v. BLM*, 565 F.3d 683, 703 (10th Cir. 2009) ("By focusing both agency and public attention on the environmental effects of proposed actions, NEPA facilitates informed decisionmaking by agencies and allows the political process to check those decisions."). CEQ cannot ignore the diminution of this informational role that is at the heart of the statute.

The harm that will be occasioned by the rulemaking will begin immediately and will be irreparable, as the Conservation Groups have amply demonstrated in their Memorandum in Support of their Motion. CEQ is incorrect when it states that the Conservation Groups will not suffer any environmental harm because no permits will be issued on September 14. As set out in the Conservation Groups' memorandum, environmental harm begins as soon as the bureaucratic processes stop considering a full range of environmental impacts and alternatives. Dkt. 30-1 at 87-102. Moreover, procedural harm to the Conservation Groups has already occurred because CEQ did not consider or respond to the Groups' comments as the APA requires it to do. *Id.* at 108-10. And immediately upon implementation of the Rule, the Conservation Groups will begin to suffer informational injury as they no longer receive the full range of information about projects they are entitled to under the law; for many types of projects, there will no longer be *any* information made available under NEPA. *Id.* at 102-07; *FEC v. Akins*, 524 U.S. 11, 21 (1998).

3

This injury will mean that the organizations are forced to divert resources away from their core missions in order to pursue other ways of gathering the newly-withheld information. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Indeed, this harm has already begun to occur, as the Conservation Groups, in anticipation of the changes the Rule will bring, have started to submit FOIA requests for information that they can no longer rely on the NEPA process for under the new Rule. *See* discussion and supporting declarations. Dkt. 30-1 at 106-07.

     Defendants' brief fails entirely to note the fact that the Rule may also be applied retroactively, with the misleading and conclusory statement that the Rule "direct[s] federal agencies on how, going forward, they should analyze *future* infrastructure projects, *future* regulations, and *future* agency actions of other kinds." Dkt 31 at 3 (emphases added). To be sure, the Rule presents imminent harms by excluding new projects from NEPA review or greatly diminishing the evaluation. But the Rule also expressly provides for its unlawful application to NEPA reviews already underway, making the harms even more immediate. 40 C.F.R. § 1506.13 (2020). And recent actions from the Administration make clear that it will be applied in this way. For example, President Trump recently issued an Executive Order requiring the heads of all federal agencies to identify actions that can be exempted from NEPA review or be authorized using recycled or abbreviated analyses.[3] Moreover, the President's remarks demonstrate that in releasing the Rule his administration intends something "very dramatic" to happen and insists the new process will be "very quick."[4] Meanwhile, the Forest Service issued a memorandum expressly ordering that staff do only the minimum environmental review required by law—to

---

[3] Exec. Order No. 13927, Accelerating the Nation's Economic Recovery from the COVID-19 Emergency by Expediting Infrastructure Investments and Other Activities, 85 Fed. Red. 35,165 (June 4, 2020).
[4] Trump Remarks, note 1, *supra*.

4

"expedite[] environmental reviews" by "ensur[ing] environmental reviews focus on analysis that is *required* by law and regulation"[5]—a mandated race to the bottom that draws no distinction between "future" projects and ongoing ones.

Maintaining the status quo while this litigation is pending is also in the public interest. The purpose of NEPA, after all, is to protect environmental quality. 42 U.S.C. § 4331. Moreover, because the Rule will apply to more than one hundred federal agencies, there is significant interest in clarifying its legality prior to implementation. Hundreds of thousands of federal staff will be required to shift practices from the procedures they have followed for four decades. As Former Managing Director of CEQ Christy Goldfuss averred, if the Rule goes into effect and is then "later enjoined on the merits, the harm caused by trying to implement the rule and then reverting to the old rule could be significant." Dkt. 30-54 at ¶ 36. Thus, it is imperative that the Court reach the merits of Conservation Groups' request for preliminary relief before the "bureaucratic gears" begin to turn. *Id.*

The Conservation Groups assiduously raised the legal issues that form the basis of their complaint in comments during the Rulemaking process, placing the government on notice of their concerns. The Conservation Groups then filed their complaint on July 29, 2020, challenging a Rule that had been issued less than two weeks prior and was so sweeping in its changes that the official "redline" version ran to sixty-six pages. *See* dkt. 30-1 at 17-19. The Conservation Groups then immediately began documenting the myriad ways that they have been

---

[5] Press Release, Secretarial Memorandum to the Chief of the Forest Service (June 12, 2020) (emphasis added), *available at* https://www.fs.usda.gov/news/releases/secretarial-memorandum-chief-forest-service. In a chilling turn, a mere two months after issuing this memorandum, the Secretary demanded that Regional Foresters identify actions they have taken or will take to implement the memorandum, with timelines, milestones, and metrics, *see* letter from Sonny Purdue, Secretary, U.S. Department of Agriculture, to Regional Forester (Aug. 10, 2020) (Exhibit 1), and at the same time posted all Regional Foresters' jobs as vacant, accepting applications from their potential replacements, Marc Heller and Scott Streater, *Perdue pressures forest managers on Trump agenda*, E&E News, Aug. 13, 2020, https://www.eenews.net/greenwire/stories/1063711613/ (Exhibit 2).

and will continue to be harmed by CEQ's sweeping, complex, and interrelated changes. When the Conservation Groups filed their motion for preliminary relief, three weeks later, no attorneys from the government had entered an appearance. Nonetheless, as soon as the Conservation Groups' motion was filed, counsel for the Conservation Groups reached out to counsel in the Virginia U.S. Attorneys' Office to provide a courtesy copy of the briefing and to attempt to coordinate on a schedule.[6] Rather than coordinate, however, the government filed this opposition along with a motion for extension of time.[7]

Unless the Federal Government can commit to a voluntary stay of the Rule, the Conservation Groups will be harmed on September 14, 2020 as this procedurally-defective and substantively-indefensible Rule goes into effect and as it shuts off the flow of information to the Conservation Groups, the public, and the decisionmakers who will be unable to make fully informed and responsible decisions about the environmental impacts of important projects. Expedited briefing is needed to ensure that instead, the forty-year status quo remains in place while the Court rules on the merits of the Administrative Procedure Act violations set out in the Conservation Groups' challenge.

Nor is the government's imminent motion to dismiss a reason to delay briefing and a ruling on this motion for preliminary injunction or stay. CEQ can make its standing and harm arguments in opposing an injunction and separately can seek to have the Conservation Groups' challenge dismissed. "A district court … can address a motion for a preliminary injunction without making a conclusive decision about whether it has subject matter jurisdiction." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Courts regularly rule on motions for

---

[6] *See* E-mail from Kym Hunter to Justin Lugar (Aug. 19, 2020, 11:46 AM EST) (Exhibit 3).
[7] *See* E-mail from Clay Samford to Heidi Wheeler and Kym Hunter (Aug. 19, 2020, 5:12 PM EST) (Exhibit 4).

preliminary injunction prior to responsive pleadings or an answer, as in several recent cases challenging the Environmental Protection Agency's rollbacks of the scope of the Clean Water Act. *E.g., Colorado v. U.S. Envtl. Prot. Agency*, No. 20-CV-1461-WJM-NRN, 2020 WL 3402325 (D. Colo. June 19, 2020) (appeal pending).

Here, the Conservation Groups have demonstrated their pressing need for relief before the Rule goes into effect, and their request is well within the timelines set out by the Rules of Civil Procedure. Rule 6(c) states that any motion must be served, along with notice of the hearing thereof, at least 14 days before the time set for the hearing. And the time to respond to a motion for preliminary injunction can be even shorter: "broad discretion is given to the district court to manage the timing and process for entry of all interlocutory injunctions—both TROs and preliminary injunctions—so long as the opposing party is given a reasonable opportunity, commensurate with the scarcity of time under the circumstances, to prepare a defense and advance reasons why the injunction should not issue." *Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th Cir. 2000) (two days' notice was sufficient to oppose preliminary injunction). Accordingly, the Conservation Groups' request is reasonable and well within the timing set out in the Rules.

The Conservation Groups therefore respectfully request the Court schedule expedited briefing and deny Defendants' separately-filed motion for an extension of time. Dkt. 32. In order for the Court to be able to make a determination on the Conservation Groups' motion prior to September 14, 2020, they request the parties proceed with briefing in accordance with the following schedule:

August 18, 2020        Plaintiffs' Motion for Preliminary Injunction

August 31, 2020        Defendants' Opposition to Motion for Preliminary Injunction

7

September 4, 2020    Plaintiffs' Reply in Support of Motion for Preliminary Injunction

Defendants' separate motion for an extension of time, Dkt. 32, raises no additional argument nor requests additional relief, and it therefore requires no further response or reply.

Respectfully submitted, August 20, 2020.

SOUTHERN ENVIRONMENTAL LAW CENTER

/s/ Kimberley Hunter
N.C. Bar No. 41333
601 West Rosemary Street
Suite 220
Chapel Hill, NC 27516
khunter@selcnc.org
919-967-1450

/s/ Sam Evans
N.C. Bar No. 44992
48 Patton Ave
Suite 304
Asheville, NC 28801-3321
sevans@selcnc.org
828-258-2023

/s/ Nicholas S. Torrey
N.C. Bar No. 43382
601 West Rosemary Street
Suite 220
Chapel Hill, NC 27516
ntorrey@selcnc.org
919-967-1450

/s/ Megan Kimball
N.C. Bar No. 53837
601 West Rosemary Street
Suite 220
Chapel Hill, NC 27516
mkimball@selcnc.org
919-967-1450

/s/ Kristin Davis
VA. Bar No. 85076
201 West Main St.

Suite 14
Charlottesville, VA 22902-5065
kdavis@selcva.org
434-977-4090

9

## CERTIFICATE OF SERVICE

      I hereby certify that on August 20, 2020, I electronically filed the foregoing Memorandum in Support of the Conservation Groups' Motion for Preliminary Injunction with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all counsel of record.

      /s/     Kimberley Hunter