IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| WILD VIRGINIA, VIRGINIA WILDERNESS COMMITTEE, UPSTATE FOREVER, SOUTH CAROLINA WILDLIFE FEDERATION, NORTH CAROLINA WILDLIFE FEDERATION, NATIONAL TRUST FOR HISTORIC PRESERVATION, MOUNTAINTRUE, HAW RIVER ASSEMBLY, HIGHLANDERS FOR RESPONSIBLE DEVELOPMENT, DEFENDERS OF WILDLIFE, COWPASTURE RIVER PRESERVATION ASSOCIATION, CONGAREE RIVERKEEPER, THE CLINCH COALITION, CLEAN AIR CAROLINA, CAPE FEAR RIVER WATCH, ALLIANCE FOR THE SHENANDOAH VALLEY, and ALABAMA RIVERS ALLIANCE,<br><br>  Plaintiffs,<br><br>v.<br><br>COUNCIL ON ENVIRONMENTAL QUALITY and MARY NEUMAYR IN HER OFFICIAL CAPACITY AS CHAIR OF THE COUNCIL ON ENVIRONMENTAL QUALITY,<br><br>  Defendants. | Case No. 3:20-cv-00045-NKM |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR EXTENSION OF TIME**

  Defendants propose a fair and reasonable approach to the resolution of the issues before the Court. Specifically, Plaintiffs' preliminary injunction motion and Defendants' forthcoming motion to dismiss on jurisdictional grounds can both be fully briefed roughly in tandem by

1

September 15, less than one month from today.  *See* ECF No. 13 at 7-8.  It is Plaintiffs who propose an unreasonable approach.

For after weeks of self-imposed delay as they assembled their own papers,[†] Plaintiffs proceed as if the government knew exactly when and what they would file, despite having afforded no advance notice to the government.  Even in light of taking their time to file, all so they could complain the government should respond posthaste, Defendants' proposed schedule affords the government only a *one-week* extension.  Further, the government's proposed timing promotes judicial economy by allowing the Court to consider two motions at the same time—coupling predicate jurisdictional issues the Court must resolve, in any event, *before* granting extraordinary equitable relief together with the Plaintiffs' issues.  *See* ECF No. 31 at 6.

In response to Defendants' request, Plaintiffs' opposition to Defendants' extension request reiterates the theories of harm made in their preliminary injunction motion.  For several reasons, this only confirms that there is no imminent and actual injury requiring hearing by September 14, 2020.

*First*, Plaintiffs do not and cannot deny that the National Environmental Policy Act (NEPA) does not regulate the public. Thus, any allegedly unlawful change to the Council on Environmental Quality's (CEQ) NEPA regulations cannot and will not result in *any* harm on September 14.  It is only when a federal agency later opts to consider taking action subject to NEPA analysis in ensuing months or, more likely, in 2021 or 2022, after making use of the new regulations, that Plaintiffs might potentially suffer the required "actual or imminent" injury if, but only if, final agency action that can be reviewed under the Administrative Procedure Act

---

[†]  Plaintiffs' own filing underscores how long they themselves took to prepare, including numerous declarations that were signed on July 20, 2020, almost a month before they filed their motion.  *See, e.g.,*  Ex. 1 Declaration of Mary Stewart (ECF No. 30-3), Ex. 2 Declaration of Cindy Lowry (ECF No. 30-4); Ex. 3 Declaration David Shaddix (ECF No.30 -5).

eventually results. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("*Lujan II*"). Plaintiffs' emphasis on the fact that the new NEPA regulations can be applied to ongoing analyses—not just new analyses—does not alter the fundamental point that the new NEPA regulations are at best a mere ingredient in future, as-yet-determined agency action not final at this point in time or, indeed, likely to be final at any point in time before or immediately after September 14. ECF No. 33 at 4. Either way, there can and will be no impact to Plaintiffs from *any* federal agency analysis of its options, regardless of when such an analysis *began*, until there is a final agency decision.

  *Second*, Plaintiffs incorrectly claim that CEQ asserts that the government will suffer no harm from an injunction. It is, of course, not the Defendants' burden to show harm if it wants to ward off an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (plaintiff seeking an injunction bears the burden). Quite the contrary. Plaintiffs bear the burden to make the showings necessary to obtain a preliminary injunction. Nonetheless, the government *is harmed* by a delay in NEPA reform implementation, since it will take time for the agencies CEQ is regulating to adjust to the changes CEQ has promulgated. CEQ's new rule "comprehensively updates, modernizes, and clarifies the regulations to facilitate more efficient, effective, and timely NEPA reviews by Federal agencies." 85 Fed. Reg. at 43,304 (July 16, 2020). So, while Plaintiffs will not be impacted at all on the September 14 effective date (or likely even for months or even years thereafter), the government *will be harmed* if the implementation of its duly issued policies are delayed. *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (noting "the public has a powerful interest … in the ability of an elected president to enact policies"). This is because the Rule does nothing but alter government procedures—procedures

Plaintiffs can challenge the outcome of if they ever result in a final federal agency decision causing *actual injury* to them.

Moreover, contrary to Plaintiffs' charge that "the agency responsible for overseeing implementation of the 'Magna Carta of environmental law' is making the astonishing claim that NEPA doesn't matter," ECF No. 33 at 2, it is precisely because NEPA very much does matter that a time-consuming reform effort was undertaken to "promote better decisions." 85 Fed. Reg. 43,304. Plaintiffs may prefer different policies, and seek advantages for their members by fiercely resisting change to an inscrutable and increasingly outdated and unwieldy NEPA regime that slows down America's ability to build, repair, and modernize its infrastructure, while competitor nations like China blaze ahead with their infrastructure networks at speeds not seen since the Industrial Revolution. But where, as here, the "choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [courts] should not disturb it unless it appears from the statute or legislative history that the accommodation is not one that Congress would have sanctioned." *Chevron, U.S.A., Inc. v. N.R.D.C.*, 467 U.S. 837, 845 (1984).

*Third*, Plaintiffs try to prop up a theory of imminent harm justifying expedition. But in so doing, they actually illustrate their lack of harm. They provide the Court with the roadmap for why it lacks jurisdiction. Plaintiffs' assertion that "environmental harm begins as soon as the bureaucratic processes stop considering a full range of environmental impacts and alternatives" is obviously not true. ECF No. 33 at 3. Physical harm, *i.e.,* environmental harm, cannot and will not happen until federal agencies other than CEQ take additional final actions actually impacting the environment. That cannot happen until some point in the future *after* September 14, 2020. Federal courts simply lack jurisdiction to review challenges to agency procedures and

4

actions *before* they solidify into "final agency actions." *Bennett v. Spear*, 520 U.S. 154, 178 (1996). So Plaintiffs cannot challenge NEPA regulations the ink is barely dry on based on the fact that they will affect procedures other agencies will use as just one informational tool to reach their final decisions. The whole point of the APA is to channelize judicial review, commencing such review only after final agency action has issued. *See* 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

*Fourth*, without an accompanying concrete harm, Plaintiffs' procedural allegations (1) that "CEQ did not consider or respond to the Groups' comments as the APA requires it to do," and (2) that Plaintiffs "no longer receive the full range of information about projects they are entitled to under the law," ECF No. 33 at 3, do not even confer standing, let alone justify emergency equitable relief. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Such "a bare procedural violation, divorced from any concrete harm," cannot be challenged until incorporated into a final agency action affirmatively causing harm or imminently threatening to cause harm. *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). Pending that, Plaintiffs have nothing but hypothetical "some day" harms that do not justify emergency relief. *Lujan II,* 504 U.S. at 564 (noting "some day" intentions to visit areas where endangered species might be impacted do not constitute "actual or imminent" injury).

At bottom, regardless of Plaintiffs' claimed "significant interest in clarifying [the reform regulations'] legality prior to implementation," there is no jurisdiction to do so here. Nor is there a sound basis for a preliminary injunction. CEQ's NEPA regulations govern the processes of federal agencies, not the public. The amorphous nature of Plaintiffs' challenge is reflected in the fact that they could not accurately predict the first concrete situation (or even bat .200 in

predicting which among a list of five federal agency actions would first occur) where the new NEPA regulations would actually be applied. Will it be a Defense Department base expansion, will it be a Department of Agriculture timber sale to make roads safe again after a forest fire, will it be a Transportation Department grant of road-building funds, will be it a Department of Interior right-of-way for a solar project? No one can say at this point. Nor could Plaintiffs predict whether the first application of the new NEPA regulations would take any particular form—will it involve an agency rulemaking, an adjudication, the grant of a permit, or other approval issued as to a given infrastructure project? All of this is a giant set of black boxes—not only to Plaintiffs but also to Defendants at this early stage.

Plaintiffs cannot escape the administrative law realities. Generic meta-regulations, like the new NEPA reforms are a species of "regulation [that] is not ordinarily considered the type of agency action ripe for judicial review under the APA until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (*Lujan I*) (internal quotations omitted). Moreover, even if the Court someday found an APA violation among the many theories Plaintiffs have tossed out in the hope that something sticks, even if they cannot realistically hope to invalidate NEPA reform as a global matter, a court must limit itself only to a "less drastic remedy"— for example "partial" vacatur of only specific provisions— if doing so would prove "sufficient to redress respondents' injury." *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010).

The Southern Environmental Law Center earlier this year claimed NEPA reform would be so calamitous that it had to be halted before it was even finalized and printed in the *Federal*

6

*Register*.  This Court soundly rejected that baseless argument.  At least now Plaintiffs are challenging the NEPA regulations post-publication.  But there still remains much to be done in the halls of government before the rules will have any concrete effects on the regulated public.  For these reasons, there is good cause to grant CEQ's modest one-week extension of time so that it can further unpack the jurisdictional and administrative law barriers to Plaintiffs' improper facial challenge to NEPA reform.

CEQ respectfully requests that the Court grant set the commonsense schedule set forth in Defendants' Proposed Order.  ECF No 32-1.

Dated:  August 20, 2020

Respectfully submitted,

| | |
|---|---|
| THOMAS T. CULLEN<br>United States Attorney<br><br>*/s/ Krista Consiglio Frith*<br>Assistant United States Attorney<br>Virginia Bar No. 89088<br>United States Attorney's Office<br>P.O. Box 1709<br>Roanoke, VA 24008<br>TEL (540) 857-2250<br>FAX (540) 857-2614<br>Krista.frith@usdoj.gov | JEFFREY BOSSERT CLARK<br>Assistant Attorney General<br>JONATHAN BRIGHTBILL<br>Principal Deputy Assistant Attorney General<br>PAUL SALAMANCA<br>Senior Counsel<br><br>*/s/Barclay T. Samford*<br>BARCLAY T. SAMFORD<br>NM State Bar No. 12323<br>Senior Attorney<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Natural Resources Section<br>999 18th Street, South Terrace, Suite 370<br>Denver, CO 80202<br>Tel: (303) 844-1475<br>E-mail: clay.samford@usdoj.gov<br><br>MATTHEW R. OAKES<br>Senior Counsel |

Environment and Natural Resources
Division, Law and Policy
Section
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
Tel: (202) 514-2686
E-mail: matthew.oakes@usdoj.gov

CLARE BORONOW
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources
Division
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1362
clare.boronow@usdoj.gov