**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| WILD VIRGINIA, et al., | |
| *Plaintiffs*, | |
| v. | Civ. No. 3:20-cv-45-NKM |
| COUNCIL ON ENVIRONMENTAL QUALITY, et al., | Hon. Norman K. Moon |
| *Defendants*. | |

**BRIEF IN SUPPORT OF MOTION
TO INTERVENE AS DEFENDANTS**

**INTRODUCTION**

The complaint in this case challenges a final rule of the Council on Environmental Quality (CEQ) titled "Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act," and published at 85 Fed. Reg. 43,304 (July 16, 2020). This rule ("the NEPA Rule") updates and streamlines CEQ's implementing regulations for the National Environmental Policy Act (NEPA), which requires federal agencies to evaluate the environmental impact of "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). Federal actions covered by NEPA often include federal permitting decisions under separate and distinct laws like the Clean Water Act and Clean Air Act.

Over the years, NEPA reviews have become increasingly burdensome, expensive, and time-consuming to prepare, ultimately impeding business operations and development projects across the nation. The NEPA Rule addresses this problem by clarifying the requirements for and scope of NEPA reviews, improving coordination among agencies involved in reviewing a single federal project, and providing for more orderly public input.

Proposed intervenor-defendants (the "Business Associations") are nine national trade associations: the American Farm Bureau Federation, American Fuel & Petrochemical Manufacturers,

American Forest Resource Council, American Petroleum Institute, American Road & Transportation Builders Association, Chamber of Commerce of the United States of America, Federal Forest Resource Coalition, Interstate Natural Gas Association of America, and National Cattlemen's Beef Association. The Business Associations' members include builders, owners, and operators of agricultural, manufacturing, energy, and infrastructure facilities of all kinds. These companies frequently engage in operations and development projects that require federal permits and thus NEPA reviews.

The Business Associations have a significant stake in CEQ's decision to update its NEPA regulations. Under the NEPA Rule, the statute will continue to live up to Congress's original purpose of ensuring that federal agencies give "consideration [to] the environmental impact of their actions in [major] decisionmaking" (*Kleppe v. Sierra Club*, 427 U.S. 390, 409 (1976)), while providing much needed clarity regarding the scope of review. If Plaintiffs here obtain a vacatur of the Rule, CEQ's reform of the NEPA review system would be undone, and the Business Associations' members would once again be subject to an uncertain and overly-burdensome regulatory scheme that invites obstructive litigation and needlessly delays important projects and operations.

Against this background, the Business Associations should be granted leave to intervene as defendants. The motion is timely; the proposed intervenors have a self-evident legal interest in the NEPA Rule, which may be impaired if they are denied intervention; and CEQ, as a government entity charged with protecting the interests of the public at large, cannot be counted upon to represent the private interests of the regulated business community. The proposed intervenors thus satisfy all of the requirements for intervention as of right and permissively.

## STATEMENT OF FACTS

NEPA provides that, for any "major Federal action[] significantly affecting the quality of the human environment," the federal agencies with jurisdiction over the action must prepare "a detailed statement" on "the environmental impact of the proposed action." 42 U.S.C. § 4332(2)(C). The first step in this process is an environmental assessment, or EA, which determines whether the federal

action is "major" and whether it will have a "significant" effect on the environment. *See* 40 C.F.R. § 1508.9. If a proposed action meets these requirements, the agency must prepare an environmental impact statement, or EIS. *See* 40 C.F.R. § 1502.4.

Under CEQ regulations first promulgated in 1978, when an agency determines that an EIS is required, it must publish a notice of intent in the Federal Register giving the public an opportunity to comment. 40 C.F.R. § 1508.22. The EIS, in turn, must contain information on "the environmental impact of the proposed action" and "any adverse environmental effects which cannot be avoided should the proposal be implemented." 42 U.S.C. § 4332(2)(C). Historically, the EIS must identify and discuss "all reasonable alternatives" to the proposed action (including those not within the jurisdiction of the reviewing agency), and explain why the alternatives were not taken. *See* 40 C.F.R. §§ 1502.14–.16, 1502.19. After completion of the EIS, which typically takes many years to prepare, the agency must take additional public comments. 40 C.F.R. § 1503.1. This is followed by a short waiting period and ultimately the issuance of a Record of Decision, or ROD. An ROD describes the agency's decision, the alternatives the agency considered, and the agency's plans for mitigation and monitoring of environmental effects, if necessary. 40 C.F.R. § 1505.2.

Due largely to the risk of litigation and inconsistent judicial interpretations of key NEPA terms and requirements, federal agencies have implemented progressively more complex and burdensome requirements under NEPA over the years. When CEQ's regulations were first promulgated more than 40 years ago, they stated that EISs normally should be less than 150 pages, with a maximum length of 300 pages for proposals of "unusual scope or complexity." 40 C.F.R. § 1502.7 (2018). Today, compliance with those limits is the exception rather than the norm. The average length for a final EIS now exceeds 650 pages, and a quarter of all final statements exceed 750 pages. *See* 85 Fed. Reg. at 43,305. CEQ previously recommended that the completion of an EIS should not take longer than one year; in reality, the average time now approaches five years. *Id.*; *accord* GAO, *National Environmental Policy Act*, GAO-14-370, at 14 (April 2014), perma.cc/9UTJ-3C4N.

More fundamentally, agencies undertaking NEPA reviews have lately gathered and analyzed boundless amounts of data and evidence concerning distantly indirect effects for use in analyses that have often been irrelevant to their decisionmaking processes, all to minimize the risk that a court will later find the record insufficient. Along the way, regulated entities have been required to produce redundant documents to multiple agencies participating in a largely uncoordinated process. Yet this vast over-inclusion and repetition has not, in fact, reduced the risk of litigation, which has persisted in the face of unclear and inconsistent regulatory and judicial interpretations of terms.

To address these problems, CEQ published an advanced notice of proposed rulemaking on June 20, 2018 (83 Fed. Reg. 28,591) and a notice of proposed rulemaking on January 20, 2020 (85 Fed. Reg. 1,684) proposing to "modernize and clarify the CEQ regulations" and "to facilitate more efficient, effective, and timely NEPA reviews" by "simplifying regulatory requirements, codifying certain guidance and case law relevant to these proposed regulations, revising the regulations to reflect current technologies and agency practices, [and] eliminating obsolete provisions." *See* 85 Fed. Reg. at 1,685. CEQ received and considered more than 8,000 unique comments on the NPRM, including from each of the Business Associations. *See* Yates Decl. (Ex. 1) ¶ 6; Moskowitz Decl. (Ex. 2) ¶ 6; Imbergamo Decl. (Ex. 3) ¶ 9; Macchiarola Decl. (Ex. 4) ¶ 6; Goldstein Decl. (Ex. 5) ¶ 6; Mortimer Decl. (Ex. 6) ¶ 6; Dreskin Decl. (Ex. 7) ¶ 6; Yager Decl. (Ex. 8) ¶ 6.

CEQ published the final NEPA Rule on July 16, 2020, and it becomes effective September 14, 2020. The NEPA Rule reforms the NEPA review process in numerous respects, including by clarifying the proper scope of NEPA reviews, facilitating coordination for reviews involving more than one agency, and identifying presumptive page and time limits for reviews.

Plaintiffs, a group of environmental organizations, filed this lawsuit on July 29, 2020. Dkt. 1. They allege that the NEPA Rule violates the Administrative Procedure Act and exceeds CEQ's statutory authority. *See* Dkt. 1 ¶¶ 560-656. Plaintiffs ask the Court to vacate the NEPA Rule as unlawful and enjoin CEQ from implementing or enforcing it. *Id.* at pp. 179-180.

## LEGAL STANDARD

Federal Civil Rule 24 provides for intervention as of right and permissively. Pursuant to Rule 24(a)(2), a district court is required to grant leave to intervene, upon timely application, when "the applicant claims an interest relating to . . . the subject of the action and [he] is so situated that the disposition of the action may as a practical matter impair or impede [his] ability to protect that interest." *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989). Thus, "intervention of right is dependent on the moving party's fulfillment of three requirements: interest, impairment of interest and inadequate representation." *Id*. In general, "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *United States v. ExxonMobil Corp.*, 264 F.R.D. 242, 245 (N.D. W.Va. 2010) (quoting *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986)). District courts routinely grant intervention as of right to national trade groups in administrative law challenges like this one.[1]

A court may alternatively grant permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3). The Court considers a range of factors including "the nature and extent of the intervenors' interests," the degree to which those interests are "adequately represented by other parties," and "whether [the] parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the

---

[1] *See, e.g.*, *California v. U.S. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1158 (N.D. Cal. 2019) (granting intervention to national trade associations and conservation associations in an APA case challenging Department of Interior regulations); *S.C. Coastal Conservation League v. Pruitt*, 2018 WL 2184395, at *9 (D.S.C. May 11, 2018) (granting intervention to several of the Business Associations in an APA challenge to a federal regulation under the Clean Water Act); *California v. Bureau of Land Mgm't*, 2018 WL 3439453, at *8 (N.D. Cal. July 17, 2018) (granting intervention to national trade associations as defendants in an APA case concerning an oil extraction regulation); *Wildearth Guardians v. Jewel*, 2014 WL 7411857, at *3 (D. Ariz. Dec. 31, 2014) (granting intervention in an APA challenge to a final agency action under the Endangered Species Act).

legal questions presented." *Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)). "Permissive intervention is left to the broad discretion of the Court and should be construed liberally in favor of intervention." *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012); *see also Hengle v. Curry*, 2018 WL 3016289, at *4 (E.D. Va. June 15, 2018) ("[T]he Fourth Circuit generally takes a liberal approach towards permissive intervention.") (citing *Feller*, 802 F.2d at 729).

## ARGUMENT

### A. The Business Associations are entitled to intervene as of right.

The Business Associations meet all four requirements for intervention as of right under Rule 24(a): They have concrete interests at stake in this litigation, and CEQ, as an executive branch agency, will not adequately represent those interests or align with the Business Associations' view of the relevant issues. Courts in this Circuit have recognized that intervention by national trade associations as defendants is appropriate in APA suits, like this one, challenging federal regulations that govern the associations' members. *See, e.g.*, *S.C. Coastal Conservation League v. Ross*, 2019 WL 5872423, at *3 (D.S.C. Feb. 8, 2019) (permitting American Petroleum Institute and other parties to intervene as of right to defend agency actions permitting oil and gas surveys in coastal waters); *S.C. Coastal Conservation League v. Pruitt*, 2018 WL 2184395, at *9 (D.S.C. May 11, 2018) (granting intervention to several of the Business Associations in an APA challenge to a major federal regulation under the Clean Water Act). The same outcome is warranted here.

1. The motion is timely. In assessing timeliness, "a trial court in this Circuit is obliged to assess three factors: first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Alt v. EPA*, 758 F.3d 588, 591 (4th Cir. 2014). These factors indicate straightforwardly that the motion here is timely. This motion has been filed within four weeks of the commencement of this lawsuit on

July 29, 2020. There is no risk of prejudice because the case is in its earliest stages. *See, e.g.*, *United States v. Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely.") (citing *Scardelletti v. Debarr,* 265 F.3d 195, 203 (4th Cir. 2001)); *see also, e.g.*, *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (noting that "[a]pplicants filed their motion to intervene in a timely manner, less than three months after the complaint was filed and less than two weeks after the [government] filed its answer to the complaint").[2]

    2.    The Business Associations have a "significantly protectable" interest implicated by Plaintiffs' challenge to the NEPA Rule. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). It is well established that trade associations generally have "a sufficient interest to permit [them] to intervene [when] the validity of a regulation from which [their] members benefit is challenged," where lifting the regulation "might well lead to significant changes in the profession and in the way [the members] conduct their businesses." *N.Y. Pub. Interest Research Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975) (per curiam); *see also JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286, 290 (4th Cir. 2009) ("[T]he threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest."); *Kentuckians for Commonwealth, Inc. v. Rivenburgh*, 204 F.R.D. 301, 306 (S.D. W.Va. 2001) (allowing intervention in Clean Water Act and NEPA case by "an association composed of members of the regulated industry").

---

[2]  Plaintiffs filed a motion for a preliminary injunction three days ago, on August 18, 2020. *See* Dkt. 30. Consistent with Rule 24(c) and the Court's recent scheduling order (Dkt. 35), the Business Associations will file an answer to the complaint and an opposition to the motion on or before September 2, 2020. *Cf. Marshall v. Meadows*, 921 F. Supp. 1490, 1492 (E.D. Va. 1999) (under Rule 24(c), permitting a proposed intervenor to file an answer three weeks and one day after the motion to intervene "where even the named defendants are not yet required to answer") (citing *Spring Construction Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) (disclaiming an overly "technical" reading of Rule 24(c)). Granting intervention therefore will not impede briefing of, or decision on, the preliminary injunction motion in any respect.

That is the case here. The NEPA Rule improves regulatory certainty—and reduces the regulatory burden and likelihood of litigation—for the Business Associations' members. It does so by clarifying NEPA's key terms, more appropriately calibrating the regulations' scope to the words that Congress used. In addition, the Rule will make NEPA reviews less time consuming, more efficient, and less costly by encouraging coordination among agencies involved in a single federal project (*see* 85 Fed. Reg. at 43,325) and setting predictable and enforceable rules concerning timelines and page limits (*id*. at 43,362-64). It also will eliminate the need to categorize effects as "direct" or "indirect" and situate the concept of "cumulative" effects within the proximate-cause framework, focusing appropriately on whether effects are reasonably foreseeable and have a reasonably close causal relationship to the proposed action. *Id*. at 43,343-44.

All of this together will make NEPA reviews significantly more efficient and less burdensome for the Business Associations' members, who frequently must participate in the NEPA review process in connection with permits for their ongoing operations and development projects. *See* Yates Decl. ¶ 7; Moskowitz Decl. ¶ 7; Imbergamo Decl. ¶ 10; Macchiarola Decl. ¶ 7; Goldstein Decl. ¶ 7; Mortimer Decl. ¶ 7; Dreskin Decl. ¶ 7; Yager Decl. ¶¶ 7-9. The clarified and simplified procedures under the NEPA Rule will save the Business Associations' members from significant regulatory burdens and obstructive delays that Congress never intended them to bear, allowing them to dedicate more of their resources to their businesses—including projects like efficient mass transit lines and renewable energy facilities. *See* Yates Decl. ¶¶ 8-9; Moskowitz Decl. ¶¶ 8-9; Fite Decl. ¶¶ 11-12; Macchiarola Decl. ¶¶ 8-9; Goldstein Decl. ¶¶ 8-9; Mortimer Decl. ¶¶ 8-9; Dreskin Decl. ¶¶ 8-9; Yager Decl. ¶¶ 10-11.

The Business Associations thus have a "major economic stake in the outcome of this litigation" that easily suffices to support intervention. *S.C. Coastal Conservation League*, 2019 WL 5872423, at *2; *see also, e.g.*, *California v. Bureau of Land Mgmt.*, 2018 WL 3439453, at *8 (N.D.

8

Cal. July 17, 2018) (permitting American Petroleum Institute to intervene in case involving rescission of regulation regarding oil and gas development on public lands).

3. The resolution of this case may impair the Business Associations' ability to protect their interests. "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is minimal." *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 108 (M.D. Pa. 2011) (quoting *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001)).

Plaintiffs here seek a complete vacatur of the NEPA Rule. If this Court entered a judgment granting that relief, the Business Associations' members would remain subject to the prior NEPA regulatory framework and its many burdens. To protect their interests, it is essential that the Business Associations be allowed to participate in this case.[3]

4. Finally, the Business Associations cannot rely on CEQ to adequately represent their interests. Here, again, a proposed intervenor's "burden of showing an inadequacy of representation is minimal." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976).

As a general matter, "the government's position is defined by the public interest," not just "the interests of a particular group of citizens." *Feller*, 802 F.2d at 730; *accord Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) ("The government must represent the broad public interest, not just the economic concerns" of private business interests); *Defs. of Wildlife v. N.C. Dep't of Transp.*,

---

[3] Recent Supreme Court decisions make clear that the Business Associations, who seek to intervene as defendants and do not seek additional relief beyond that sought by the other parties, are not required to demonstrate independent Article III standing. *See, e.g.*, *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) (citing *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017)); *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1952 (2019). But even if the Business Associations were required to establish standing, they have readily done so in light of the concrete injuries that they and their members would suffer if the NEPA Rule were invalidated. *See, e.g.*, *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015) (finding "a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit").

9

281 F.R.D. 264, 268-69 (E.D.N.C. 2012) (similar). Courts thus routinely grant intervention in cases like this because "[t]he interests of government and the private sector may diverge," and "[t]he priorities of the defending government agencies are not" the same as the priorities of the private, regulated public. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001).

Just so here. CEQ's and the Business Associations' interests differ significantly in this litigation, principally because the CEQ and the Business Associations often have competing priorities when it comes to NEPA and to the federal government's authority and obligations under administrative law. In light of their often conflicting priorities, the substantive legal positions that CEQ takes in this lawsuit will therefore diverge from the positions that the Business Associations would take.

For example, we anticipate that CEQ may raise arguments against the plaintiffs' standing that would be inconsistent with the Business Associations' interests. It is imperative that the Business Associations be permitted to intervene to challenge plaintiffs' standing while at the same time protecting the ability of nongovernmental organizations, in other contexts, to bring facial challenges to important federal regulations. CEQ cannot be expected to adequately represent the Business Association's important and nuanced interests in these arguments. Similarly, the Business Associations and CEQ likely will approach the potential applicability of *Chevron* deference differently. CEQ has an institutional interest in aggressively protecting deference doctrines. *See* 85 Fed. Reg. at 43,307 (explaining that the NEPA Rule is "intended to embody CEQ's interpretation of NEPA for *Chevron* purposes"). The Business Associations do not share the government's institutional interest in *Chevron*; indeed, they are often opposite federal agencies in litigation where their interests with respect to deference point in opposite directions. For all of these reasons, the government's reliance on arguments that are inconsistent with the Business Associations' interests "is not just a theoretical possibility," but an imminent one. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006). The Business Intervenors will thus "bring a point of view to the litigation not presented by either the plaintiffs or the defendants." *Id*. at 445.

Even concerning the ultimate objective of upholding the NEPA Rule, there is a risk that the Business Associations' interests will not be adequately protected in light of the upcoming presidential election. New administrations often reverse policies after taking office. For example, after the administration change in January 2017, the government ceased defending a high profile Clean Water Act regulation promulgated by the prior administration. *See, e.g.*, *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1344 (S.D. Ga. 2019) (noting that EPA had "declined to defend the substantive challenges to" the rule). Such changes are common. *See, e.g.*, Federal Defs.' Mot. to Stay All Proceedings at 1, *Connecticut v. United States*, No. 3:09-cv-54 (D. Conn. Mar. 10, 2009), ECF No. 93 (informing court that government planned to rescind a healthcare moral conscience regulation and requesting that challenge be stayed).

If there is a change in administration during the pendency of this litigation, the government's position on the NEPA Rule is likely to change, and it may cease defending the Rule in litigation. *See* Juliet Eilperin & Felicia Sonmez, *Trump scales back landmark environmental law, saying it will help restart the economy*, Wash. Post., July 15, 2020, perma.cc/FAS8-9YDH (reporting that the Biden campaign has promised to "reverse the new [NEPA] rule if elected"). Thus, CEQ cannot be counted upon to adequately represent the Business Associations' interest in a consistent and robust defense of the provisions of the Rule from which they will benefit.

The Business Associations also have no guarantee that CEQ will exhaust its appellate remedies in the event of an unfavorable decision from this Court. *See Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004). Intervention is necessary to ensure that the Business Associations are placed "on equal terms" and allowed "to make their own decisions about the wisdom of carrying the battle forward" on appeal. *Id.*

### B. Alternatively, the Business Associations should be allowed to intervene permissively.

Because the Business Associations are entitled to intervene as of right, the Court need not decide whether intervention should be granted permissively. But if the Court denies intervention as of right, it should grant the Business Associations leave to intervene permissively instead.

The Business Associations have met the permissive intervention standard for the same reasons that make intervention proper as of right. *See "R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) ("The court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)."). Permitting the Business Associations to intervene to defend the NEPA Rule would allow them to vindicate their substantial interests, and given their promptness in seeking intervention, would neither delay this case nor prejudice any of the parties. *See McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970) (permissive intervention should be granted "where no one would be hurt and greater justice would be attained").

Because "the Fourth Circuit generally takes a liberal approach towards permissive intervention" (*Hengle*, 2018 WL 3016289, at *4) and Rule 24(b) "should be construed liberally in favor of intervention" (*Savannah Riverkeeper*, 2012 WL 13008326, at *2), the Court at minimum should permit the Business Associations to intervene permissively.

## CONCLUSION

The motion to intervene should be granted.

Dated: August 21, 2020

Respectfully submitted,

/s/ Joshua D. Rogaczewski

MICHAEL B. KIMBERLY*
JOSHUA D. ROGACZEWSKI
MATTHEW A. WARING*
   McDermott Will & Emery LLP
   500 North Capitol Street NW
   Washington, DC 20001
   (202) 756-8000
   kruffing@mwe.com
   mkimberly@mwe.com
   mwaring@mwe.com

*Attorneys for the Business Associations*

* *pro hac vice* motion pending