**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| WILD VIRGINIA, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> COUNCIL ON ENVIRONMENTAL QUALITY, et al., <br><br> *Defendants*. | Civ. No. 3:20-cv-45-MFU <br><br> Hon. Michael F. Urbanski |

**BRIEF IN SUPPORT OF BUSINESS ASSOCIATIONS' MOTION TO DISMISS**

**INTRODUCTION**[†]

The complaint in this case challenges a final rule of the Council on Environmental Quality (CEQ) titled "Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act," and published at 85 Fed. Reg. 43,304 (July 16, 2020). This rule ("the NEPA Rule") updates CEQ's implementing regulations for the National Environmental Policy Act (NEPA), which requires federal agencies to evaluate the environmental impact of "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

---

[†] The Business Associations stated in their intervention brief that they would file an answer to the complaint, pursuant to Rule 24(c), along with an opposition to the plaintiffs' pending preliminary injunction motion. *See* Dkt. 38, at 7 n.2. Particularly in light of the burdensome length of the complaint, the Business Associations have since determined that a motion to dismiss is warranted in lieu of an answer. Courts uniformly find that motions to dismiss are adequate to satisfy Rule 24(c). *See, e.g.*, *Ctr. for Biological Diversity v. Jewell*, 2015 WL 13037049, at *1 (D. Ariz. 2015) (Rule 24(c) is satisfied with a "motion to dismiss, in lieu of an answer"); *New Century Bank v. Open Sols., Inc.*, 2011 WL 1666926, at *3 (E.D. Pa. 2011) (a "motion to dismiss . . . satisfies Rule 24(c)"); *Aids Healthcare Found., Inc. v. Orange Cty.*, 2008 WL 5381855, at *1 (M.D. Fla. Dec. 23, 2008) (finding Rule 24(c) satisfied where the proposed intervenor "seeks to join in [the defendant's] motion to dismiss"). In addition, the Business Associations intend to file an opposition to the pending motion for a preliminary injunction by September 2, 2020. That brief will apprise the Court and parties of additional "defense[s] for which intervention is sought," which is the purpose of Rule 24(c). *Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 101 (W.D. N.C. 2009) (permitting intervention without any separate brief or pleading filed pursuant to Rule 24(c)).

The Business Associations—the American Farm Bureau Federation, American Fuel & Petrochemical Manufacturers, American Forest Resource Council, American Petroleum Institute, American Road & Transportation Builders Association, Chamber of Commerce of the United States of America, Federal Forest Resource Coalition, Interstate Natural Gas Association of America, and National Cattlemen's Beef Association—have moved to intervene to defend the NEPA Rule against plaintiffs' various challenges. *See* Dkt. 37. But before the Court can consider the merits of plaintiffs' challenges, plaintiffs must demonstrate that they have properly invoked this Court's jurisdiction. It is at this threshold that plaintiffs' cause must end: plaintiffs lack Article III standing to pursue their challenges to the NEPA rule because they allege only hypothetical injuries stemming from future federal actions or NEPA reviews that have yet to come to pass.

## BACKGROUND

NEPA provides that, for any "major Federal action[] significantly affecting the quality of the human environment," the federal agencies with jurisdiction over the action must prepare "a detailed statement" on "the environmental impact of the proposed action." 42 U.S.C. § 4332(2)(C). The first step in this process is an environmental assessment, or EA, which determines whether the federal action is "major" and whether it will have a "significant" effect on the environment. *See* 40 C.F.R. § 1508.9. If a proposed action meets these requirements, the agency must prepare an environmental impact statement, or EIS. *See* 40 C.F.R. § 1502.4.

To address the growing burdens of NEPA reviews and associated litigation, CEQ published an advanced notice of proposed rulemaking on June 20, 2018 (83 Fed. Reg. 28,591) and a notice of proposed rulemaking on January 10, 2020 (85 Fed. Reg. 1,684) proposing to "modernize and clarify the CEQ regulations" and "to facilitate more efficient, effective, and timely NEPA reviews" by "simplifying regulatory requirements, codifying certain guidance and case law relevant to these proposed regulations, revising the regulations to reflect current technologies and agency practices, [and] eliminating obsolete provisions." *See* 85 Fed. Reg. at 1,685.

CEQ published the final NEPA Rule on July 16, 2020, and it becomes effective September 14, 2020. The NEPA Rule reforms the NEPA review process in numerous respects, including by clarifying the proper scope of NEPA reviews, facilitating coordination for reviews involving more than one agency, clarifying key terms, and identifying presumptive page and time limits for reviews.

Plaintiffs, a group of environmental organizations, filed this lawsuit on July 29, 2020. Dkt. 1. In ten claims, they allege that the NEPA Rule violates the Administrative Procedure Act and exceeds CEQ's statutory authority. *See* Dkt. 1 ¶¶ 560-656. Plaintiffs ask the Court to vacate the NEPA Rule as unlawful and enjoin CEQ from implementing or enforcing it. *Id.* at pp. 179-180.

Plaintiffs moved for a preliminary injunction on August 18, 2020, seeking to enjoin or stay the NEPA Rule pending a final decision on the merits in this case. *See* Dkt. 30.

## LEGAL STANDARD

As the parties invoking the Court's jurisdiction, plaintiffs bear the burden of establishing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). Because "standing is not dispensed in gross, . . . a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citations omitted). Where a plaintiff fails to establish Article III standing, Federal Rule of Civil Procedure 12(b)(1) requires dismissal.

To establish Article III standing, a plaintiff must prove "the three 'irreducible minimum requirements' of Article III standing" (*Beck*, 848 F.3d at 269): that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019) (quoting *Friends of the Earth, Inc. v. Laidlaw Envnt'l Servs.*, 528 U.S. 167, 180–181 (2000)), *cert. denied*, 140 S. Ct. 392 (2019).

3

A cognizable injury-in-fact requires a "realistic danger of sustaining a direct injury." *South Carolina*, 912 F.3d at 726 (quoting *Peterson v. Nat'l Telcoms. & Info. Admin.*, 478 F.3d 626, 632 (4th Cir. 2007)). "[W]hile it is true 'that threatened rather than actual injury can satisfy Article III standing requirements,' . . . not all threatened injuries constitute an injury-in-fact." *Id.* (quoting *Beck*, 848 F.3d at 271). The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and . . . '*possible* future injury' [is] not sufficient.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "The requirement that an alleged injury be palpable and imminent ensures that the injury 'is not too speculative for Article III purposes.'" *South Carolina*, 912 F.3d at 726 (quoting *Beck*, 848 F.3d at 271).

## ARGUMENT

Plaintiffs assert three theories of harm that purportedly will befall them if the NEPA Rule takes effect—environmental harm, informational harm, and procedural harm. *See* PI Mem. 72-96. Each theory fails to establish Article III standing. NEPA does not regulate primary conduct, nor does it dictate substantive outcomes for permitting decisions or other major federal actions. Plaintiffs profess otherwise but offer only vague speculation about how future federal actions or NEPA reviews might play out in various hypotheticals, without tying the NEPA Rule to a certainly impending injury experienced personally by them or their members. At this stage in the regulatory process, plaintiffs' complaint amounts to a request for an impermissible advisory opinion. The complaint accordingly must be dismissed.

### A.  Plaintiffs have not established standing based on environmental injury

Plaintiffs' assert that they "will suffer [e]nvironmental [h]arm" under the NEPA Rule. PI Mem. 73-88. But hypothesizing that the Rule may harm the environment at unknown times or in unknown places is exactly the type of speculation Article III forbids federal courts from entertaining. Plaintiffs therefore cannot establish standing based on environmental injury-in-fact.

4

"The relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." *Laidlaw*, 528 U.S. at 181. To show a concrete, particularized injury in this context, plaintiffs must therefore show that "[they] use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Id.* at 183. Plaintiffs must establish "specific facts" showing that their members' enjoyment of the environment "will be lessened" if this Court does grant the requested relief. *Id*. The asserted injury must be real and "imminent" and cannot be "conjectural." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, this requires that plaintiffs (1) identify at least one particular federal action, pending or imminent, that will be reviewed (or exempted from review) under the NEPA Rule's revised procedures and standards, and (2) show that application of the NEPA Rule to that action will impact the environment in a concrete and identifiable way, causing them injury. Crucially, on this score, "[a] concrete injury is 'de facto,' meaning that 'it must actually exist' and is 'real, and not abstract.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 344 (4th Cir. 2017). Speculation and abstract violations of law do not suffice. *Clapper*, 568 U.S. at 414.

Plaintiffs cannot make that showing in this context. NEPA is a procedural statute that does not dictate substantive outcomes. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). Consistent with NEPA's procedural character, the NEPA Rule clarifies the proper scope of NEPA reviews, facilitates coordination for reviews involving more than one agency, and identifies presumptive page and time limits for reviews. But the Rule's effect *on the environment*— that is, on the substantive outcomes of federal actions implicating NEPA reviews—is wholly uncertain at this time. Any harm to the environment from the NEPA Rule (if there is to be any) "lies at the end of a 'highly attenuated chain of possibilities,'" which is flatly inconsistent with Article III standing. *South Carolina*, 912 F.3d at 727; *accord Clapper*, 568 U.S. at 413 (the Court is "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment").

5

For the same reasons, plaintiffs cannot establish that it "is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *South Carolina*, 912 F.3d at 726. Because NEPA establishes procedural standards without dictating substantive outcomes, there is no way to determine at this stage whether a stay of the NEPA Rule would actually forestall the general environmental effects that plaintiffs imagine in their briefing. Because the NEPA Rule does not alter the requirements for the substantive federal decisions that implicate environmental reviews, the same outcomes could be obtained with or without the Rule.

The dizzying catalogue of declarations at pages 75-87 of plaintiffs' preliminary injunction brief do not solve these problems, for two reasons.

*First*, the declarations either address past NEPA reviews or speculate about future NEPA reviews that have yet to take place. They do not identify actual, pending federal actions, the outcomes of which will demonstrably change under the NEPA Rule. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 110 (1983) (to establish standing on the basis of future events, a plaintiff must show an actual, "immediate threat" of an impending injury). They therefore are insufficient to establish "actual or imminent injury." *Lujan*, 504 U.S. at 564 (quotation marks omitted).

*Second*, the declarations merely express generalized "concern" about how the Rule might impact the environment. *See* PI Mem. 76-85 & nn.145-205. The Supreme Court "ha[s] repeatedly held that such a 'generalized grievance,' no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). "A litigant 'raising only a generally available [concern]—claiming only harm to his and every citizen's interest in proper application of the [law], and seeking relief that no more directly and tangibly benefits him than it does the public at large— does not state an Article III case or controversy.'" *Id.* (quoting *Lujan*, 504 U.S. at 573-574). That is this case exactly.

Emblematic is the declaration of Elaine Chiosso (Dkt. 30-40), whose testimony is cited as evidence that the NEPA Rule will impact pending and future federal projects. *See* PI Mem. 82 n.182;

83 nn.187 & 194. She cites past NEPA reviews concerning a pipeline and a large community development in North Carolina and anticipates that further NEPA reviews will be required for additional permits for both projects. *See* Chiosso Decl. ¶¶ 14, 16. But as to each, she states only that she is "concerned" that "agencies *might* begin to conduct advanced acquisition of property" before completing forthcoming NEPA reviews, "bias[ing] the decisionmaking down the line." *Id*. ¶¶ 15, 18 (emphasis added). That is speculation on top of speculation. Indeed, not even Ms. Chiosso will hazard a guess at how those future "bias[ed]" NEPA reviews would produce different substantive outcomes in the hypothetical state of affairs that she imagines. And even if she did, it would be only that—a guess.

At bottom, plaintiffs' "concern[]" that "private applicants or federal agencies *may* take steps that affect important environmental resources" or "*might* move [development] along without careful thought," to the detriment of the environment (PI Mem. 86 (emphasis added)), is exactly the type of speculation that is insufficient to establish standing.

With respect to environmental harm, the Business Associations further adopt and incorporate by reference pages 18-20 and 24-32 of the government's brief in support of its motion to dismiss.

### B. Plaintiffs have not established concrete informational injury

Unable to rely on a concrete or imminent environmental harm, plaintiffs turn to other theories to establish standing. They invoke, first, "informational harm" and related diversion of resources (PI Mem. 88-93), but neither theory satisfies Article III.

For alleged informational injuries, "distinct standing principles apply in addition to the generally applicable legal rules." *Ctr. for Biological Diversity v. Bernhardt*, 442 F. Supp. 3d 97, 105 (D.D.C. 2020). "[A] plaintiff suffers a concrete informational injury [(1)] where he is denied access to information required to be disclosed by statute, *and* [(2)] he 'suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure.'" *Dreher*, 856 F.3d at 345 (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). The

complaint fails this test. Indeed, plaintiffs' "informational harm" theory is every bit as generalized and speculative as their environmental harm theory.

First, Plaintiffs cannot show that they actually have been (or imminently will be) denied access to particular information required to be disclosed by NEPA. *Dreher*, 856 F.3d at 345. Rather, plaintiffs' informational injury argument turns on the notion that unidentified agencies will withhold unidentified information at unidentified times in the future. That sort of prospective, hypothetical approach is not sufficient to satisfy the first stage of the *Dreher* analysis. But this is hardly worrisome, because plaintiffs may bring APA challenges to any final agency actions as to which plaintiffs *actually* have been deprived of information to which they believe they are entitled.

This shortcoming has direct implications for the second stage of the *Dreher* analysis. The purpose of information-disclosure under NEPA is to foster public participation in the statute's notice-and-comment processes. *E.g.*, 40 C.F.R. §§ 1503.1, 1503.4, 1508.22. Yet it is well settled that "a plaintiff cannot establish organizational standing based solely on 'the deprivation of the right to participate in [a] notice-and-comment'" process, considered in a vacuum. *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the United States*, 78 F. Supp. 3d 208, 237 (D.D.C. 2015) (quoting *Scenic America, Inc. v. U.S. Dep't of Transp.*, 983 F. Supp. 2d 170, 177 (D.D.C. 2013)). Rather, a plaintiff must show that he or she was actually *harmed* by the withholding of information or other denial of a meaningful opportunity to comment. *See, e.g.*, *Brotherhood of Teamsters v. TSA*, 429 F.3d 1130, 1135 (D.C. Cir. 2005) (the "mere inability to comment effectively or fully, in and of itself, does not establish an actual injury"); *Air Transport Ass'n of America v. Civil Aeronautics Board*, 732 F.2d 219, 224 n. 11 (D.C. Cir. 1984) (finding harmless error where the challenger "[did] not explain what it would have said" in comments if it had been given timely "access" to particular information).

Here, plaintiffs fail that requirement precisely because they do not identify any specific information required to be disclosed under NEPA to which they are actually being denied access. As

8

a consequence, they cannot demonstrate how any such withholding was, or imminently will be, prejudicial to them or their participation in an actual notice-and-comment process—except (impermissibly) in the abstract. Nor, finally, can they show that the prejudicial denial of any such particular information would be traceable to the NEPA Rule.

These omissions are both unavoidable and fatal. Divorced from actual agency action implicating NEPA, it is not possible to identify what particular missing information might cause a concrete and adverse injury to plaintiffs, if any. Put another way, "the failure to identify what non-disclosure" plaintiffs are challenging "means that [they can]not assert with particularity how that non-disclosure has harmed [them]." *Biological Diversity*, 442 F. Supp. 3d at 111. Until the NEPA Rule is applied materially to an actual federal action, any claim based on an informational injury is a mere generalized grievance, unripe for judicial review. *See Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013)  ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'") (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)).

Plaintiffs' argument that they will have to "divert . . . resources" to "gather information previously provided through NEPA documents" does not change matters. PI Mem. 91. As the Supreme Court recognized in *Clapper*, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. The Fourth Circuit has held the same, recognizing that a decision to expend private resources, "however well-intentioned, does not constitute Article III injury, in no small part because holding otherwise would give carte blanche for any organization to 'manufacture standing by choosing to make expenditures' about its public policy of choice." *CASA de Maryland v. Trump*, 2020 WL 4664820, at *9 (4th Cir. 2020). Just so here.

With respect to informational harm, the Business Associations further adopt and incorporate by reference pages 32-36 of the government's brief in support of its motion to dismiss.

### C.     Plaintiffs have not established an actionable procedural injury

Plaintiffs' final theory is a bare procedural injury. According to Plaintiffs, CEQ did not adequately consider certain public comments. PI Mem. 94-96. But "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Instead, "a procedural-rights plaintiff must show not only that the defendant's acts omitted some procedural requirement, but also that it is substantially probable that the procedural breach will cause the essential injury to the plaintiff's own interest." *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664-665 (D.C. Cir. 1996)). Put another way, without a non-speculative basis for concluding that the Rule will cause environmental or informational harm, a bare procedural defect is insufficient to confer standing. *See Sierra Club v. EPA*, 754 F.3d 995, 1002 (D.C. Cir. 2014).

## CONCLUSION

The motion to dismiss should be granted.

Dated: August 25, 2020

Respectfully submitted,

*/s/ Joshua D. Rogaczewski*

MICHAEL B. KIMBERLY*
JOSHUA D. ROGACZEWSKI
  McDermott Will & Emery LLP
  500 North Capitol Street NW
  Washington, DC 20001
  mkimberly@mwe.com
  jrogaczewski@mwe.com
  mwaring@mwe.com
  (202) 756-8000

*Attorneys for the Business Associations*

\* *pro hac vice* motion pending

10