# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| WILD VIRGINIA, et. al., | |
| *Plaintiffs,* | |
| v. | |
| COUNCIL ON ENVIRONMENTAL QUALITY, et. al., | Case No. 3:20-cv-45-JPJ- PMS |
| *Defendants.* | |
| AMERICAN FARM BUREAU FEDERATION, et. al., | |
| *Defendant-Intervenors* | |

## *AMICUS CURIAE* BRIEF
## OF THE SOUTHERN UTE INDIAN TRIBE

Mark H. Churchill, Esq.
VSB No. 42663
HOLLAND & KNIGHT, LLP
1650 Tysons Blvd., Suite 1700
Tysons, Virginia 22102
(703) 720-8094
mark.churchill@hklaw.com

David C. Smith, Esq.
SOUTHERN UTE INDIAN TRIBE
Director, Legal Department
P.O. Box 737
Ignacio, Colorado 81137
(970) 563-2140
dasmith@southernute-nsn.gov

Thomas H. Shipps, Esq.
MAYNES, BRADFORD, SHIPPS & SHEFTEL LLP
835 East Second Avenue, Suite 123
Durango, Colorado 81301
(970) 247-1755
tshipps@mbssllp.com

*Counsel to Amicus Curiae*
*Southern Ute Indian Tribe*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTEREST OF *AMICUS CURIAE* SOUTHERN
    UTE INDIAN TRIBE ..................................................................................................1

SCOPE OF MATTERS ADDRESSED .......................................................................3

SUMMARY OF ARGUMENT ......................................................................................3

THE ROLE OF THE TRIBE UNDER CEQ'S 2020 RULE ...............................................4

PARTICIPATION BY TRIBES IN CEQ'S RULEMAKING ...........................................5

NEPA'S APPLICATION TO INDIAN LANDS –
    CONGRESSIONAL TRENDS ....................................................................................5

OVERBREADTH OF PRELIMINARY INJUNCTION ....................................................7

CONCLUSION ...............................................................................................................8

## TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Southern Ute Indian Tribe*, 526 U.S. 865 (1999) ...............................1

*Davis v. Morton*, 469 F.2d 593 (10th Cir. 1972) ................................................................2

**Statutes and Regulations**

25 U.S.C. § 81 .....................................................................................................................2

25 U.S.C. § 177 ...................................................................................................................2

25 U.S.C. § 415(e), Navajo Nation Trust Land Leasing
   Act of 2000, Pub. L. No. 106-568, § 1201, 114 Stat. 2933 ...........................................6

25 U.S.C. § 415(h), Helping Expedite Affordable and
   Responsible Tribal Homeownership Act of 2012,
   Pub. L. No. 112-151, 126 Stat. 1150 .............................................................................6

25 U.S.C. §§ 3101-3120, National Indian Forest Resource
   Management Act of 1990 ..............................................................................................7

25 U.S.C. § 3504, Indian Tribal Energy Development
   and Self-Determination Act of 2005, as amended ........................................................7

25 U.S.C. §§ 3701-3746, American Indian Agricultural
   Resources Management Act of 1993 ............................................................................7

25 U.S.C. §§ 5101, *et seq.*, formerly 25 U.S.C. §§ 461, *et seq.*
   Indian Reorganization Act of 1934 ...............................................................................1

25 U.S.C. § 5123 .................................................................................................................1

42 U.S.C. §§ 4321-4347, National Environmental Policy Act ..........................................2

42 U.S.C. § 4332(2)(C) .......................................................................................................2

**Other Authorities**

85 Fed. Reg. 43,304-43,313 ................................................................................................8

85 Fed. Reg. 43,305 ............................................................................................................8

85 Fed. Reg. 43,315 ............................................................................................................4

85 Fed Reg. 43,355 ..................................................................................................4

85 Fed. Reg. 43,359 (40 C.F.R. § 1500.5(p) (2020)) ...........................................4

85 Fed. Reg. 43,359 (40 C.F.R. § 1501.7(b) (2020)) ...........................................4

85 Fed. Reg. 43,360 (40 C.F.R. § 1501.2(4)(b) (2020)) .......................................4

BIA, Notice, Doc. No. 2020-01707, 85 Fed. Reg. 5462 (Jan. 30, 2020) ............5

Final Rule Response to Comments RIN 03331-AAA03
    (June 30, 2020), ID: CEQ-2019-720629,
    http://www.regulations.gov/docket?D=CEQ-2019-003 ...............................5

*Indian Energy and Energy Efficiency: Hearing Before
    the Sen. Comm. On Indian Affairs*, 111th Cong.
    41 (2009) (statement of Steve Herrera, Tribal Council
    Member, Southern Ute Indian Tribe)
    (available at https://www.govinfo.gov/content/pkg/
    CHRG-111shrg56321/pdf/CHRG-111shrg56321.pdf) ..................................6

Update to Regulations Implementing the Procedural
    Provisions of the National Environmental Policy
    Act, 85 Fed Red. 43,304 (July 16, 2020) (to be
    codified at 40 C.F.R. Parts 1500-1508) ........................................................3

Update to the Regulations Implementing the Procedural
    Provisions of the National Environmental Policy Act,
    Comments, CEQ-2019-003,
    http://www.regulations.gov/docket.?D=CEQ-2019-0003 ............................5

U.S. Dep't of Interior, Bureau of Indian Affairs:
    *HEARTH Act of 2012,* bia.gov/bia/ots/hearth ................................................7

*Amicus* Southern Ute Indian Tribe ("Tribe") respectfully submits the following brief in support of Defendant Council on Environmental Quality ("CEQ") and the Defendant-Intervenors in their opposition to Plaintiffs' Motion for Preliminary Injunction.

## INTEREST OF *AMICUS CURIAE* SOUTHERN UTE INDIAN TRIBE

The Tribe is a federally recognized Indian tribe organized under the Indian Reorganization Act of 1934 ("IRA")[1] and headquartered on a 700,000-acre (approximately) reservation in southwestern Colorado ("Reservation"). The Reservation's complex history, beginning with establishment of Reservation boundaries in an 1868 treaty, has resulted in land ownership patterns that resemble a three-dimensional checkerboard; Tribal lands sit next to private lands and surface and subsurface estates are severed in odd ownership configurations depending on the phase at various times of federal Indian policy or public land policy, such as Indian allotment, non-Indian patenting, or land restoration to the Tribe following passage of the IRA.[2]

Almost all the Tribe's surface and subsurface lands are held in trust by the United States of America for the benefit of the Tribe. One key feature of that trust relationship is a general prohibition against the leasing of the Tribe's lands or the granting of rights-of-way across those

---

[1] The Indian Reorganization Act of 1934 (codified at 25 U.S.C. §§ 5101, *et seq.*, formerly 25 U.S.C. §§ 461, *et seq.*) brought an end to the allotment policy, a destructive system that featured the distribution of tribal treaty lands among individual tribal members and the sale of remaining lands to non-Indian entrymen.  As part of its reforms, the IRA also prohibited the future "sale, disposition, lease, or encumbrance of tribal lands . . . without the consent of the tribe . . . ." 25 U.S.C. § 5123.

[2] The Southern Ute Indian Reservation exemplifies the complications arising from allotment, homesteading, and post-IRA restoration.  *See, e.g., Amoco Prod. Co. v. Southern Ute Indian Tribe*, 526 U.S. 865 (1999) (determining ownership of coal bed methane extracted from coal deposits reserved by the United States in non-Indian patents under the 1909 and 1910 Coal Lands Acts and restored to the Tribe under the IRA).

lands without the approval of the Bureau of Indian Affairs ("BIA"). *See* 25 U.S.C. § 177. In fact, under federal law, the Tribe may not enter into any contract encumbering its lands for a period greater than seven years without prior BIA approval. 25 U.S.C. § 81. No other party in these proceedings has a more direct interest than the Tribe in the application of the National Environmental Policy Act, 42 U.S.C. §§ 4321-4347 ("NEPA").

The pervasive governmental approval requirements applicable to use of the Tribe's lands implicate NEPA at almost every turn.[3] Whether the Tribe's proposed action involves the granting of a right-of-way for fiber-optic cable, issuing a surface lease for a health clinic, or entering into an oil and gas lease to protect against resource drainage from neighboring non-Indian wells, BIA approval is required. Because of NEPA's dramatic presence, the Tribe participated actively in the Advanced Notice of Proposed Rulemaking (Docket I.D. No. CEQ-2018-0001; 83 Fed. Reg. 28591 (June 20, 2018)) and the Proposed Rulemaking (Docket I.D. No. CEQ-2019-003; 85 Fed. Reg. 1684 (Jan. 10, 2020)) undertaken by the CEQ that led to the revised NEPA regulations challenged in this case. *See* Letter from Chairman Christine Sage to CEQ dated Aug. 20, 2018, CEQ-2018-0001-12261; Letter from Chairman Christine Sage to CEQ dated Feb. 25, 2020, CEQ-2019-0003-82306.

The Tribe supports CEQ's 2020 NEPA regulations because they expand the Tribe's potential role in evaluating the alternatives and environmental consequences of decisions affecting its lands and reduce the interminable delay and expense of BIA's NEPA review of the Tribe's decision-making. *See* Update to Regulations Implementing the Procedural Provisions of

---

[3] Court decisions shortly following enactment of NEPA removed any doubt that its environmental review provisions, 42 U.S.C. § 4332(2)(C), apply to the BIA's exercise of federal trust duties in approving proposed use of tribal trust lands. *See, e.g., Davis v. Morton*, 469 F.2d 593, 597 (10th Cir. 1972) ("The fact Indian lands are held in trust does not take it out of NEPA's jurisdiction.").

the National Environmental Policy Act, 85 Fed Red. 43,304 (July 16, 2020) (to be codified at 40 C.F.R. Parts 1500-1508) ("CEQ's 2020 Rule").

## SCOPE OF MATTERS ADDRESSED

In this brief, the Tribe questions and opposes the scope of relief that Plaintiffs are seeking, specifically a nationwide, preliminary injunction that would bar all aspects of CEQ's 2020 Rule scheduled to go into effect on September 14, 2020. Pls.' Mot. For Prelim. Inj., ECF No. 30. Amicus takes no position on the pending motions to dismiss filed by CEQ or that of the Defendant-Intervenors. Defs.' Mot. To Dismiss, ECF No. 52; Bus. Ass'ns' Mot. To Dismiss, ECF No. 56. The positions advanced in this brief assume, only for purposes of argument, that Plaintiffs' case survives those motions to dismiss.

## SUMMARY OF ARGUMENT

In attempting to block the entirety of CEQ's 2020 Rule from becoming effective, Plaintiffs would nullify new regulations that expand the role the Tribe and other Indian tribes may play in NEPA reviews of pending federal action involving tribal lands or interests of paramount tribal importance. The participation of tribes in the rulemaking was widespread and CEQ's record of proceedings reflects careful review of suggestions and concerns advanced in the comment process. The provisions of CEQ's 2020 Rule that expand upon the role that tribes may play in the NEPA review process are not unlawful. In fact, increased participation of tribal governments in NEPA reviews, particularly in relation to tribal lands, is consistent with several acts of Congress that grant tribes the opportunity to replace NEPA review with tribal environmental review in approving activities on tribal land. CEQ's 2020 Rule is designed to reduce the delays, expense, and lost opportunities resulting from the lack of clarity in the current NEPA regulations, and the expansive preliminary injunctive relief requested by Plaintiffs to

suspend CEQ's 2020 Rule is extraordinarily broad and would harm the Tribe without any showing as to why.

## THE ROLE OF THE TRIBE UNDER CEQ'S 2020 RULE

As observed in its explanation of CEQ's 2020 Rule, the treatment of tribes under the updated regulations "respond[s] to Tribal government comments concerning Tribal sovereign rights, interests, and the expertise of Tribes in the NEPA process. . . ." 85 Fed Reg. 43,355. Among other changes, CEQ added "'Tribal' to the phrase 'State and local' throughout the rule to ensure consultation with Tribal entities and to reflect existing NEPA practice to coordinate or consult with affected governments and agencies, as necessary and appropriate for a proposed action." 85 Fed. Reg. 43,315. In addition to requirements for early consultation with tribes (85 Fed. Reg. 43,360 (40 C.F.R. § 1501.2(4)(b) (2020)), CEQ calls for the elimination of "duplication of State, Tribal, and local procedures, by providing joint preparation of environmental documents where practicable . . . ." 85 Fed. Reg. 43,359 (40 C.F.R. § 1500.5(p) (2020)).  Further, for the first time, CEQ's 2020 Rule permits a tribe to act as a joint lead agency in preparing environmental impacts statements or environmental assessments. 85 Fed. Reg. 43,359 (40 C.F.R. § 1501.7(b) (2020)).  New provisions requiring greater coordination among federal agencies in addressing matters over which multiple agencies may have jurisdiction, should help alleviate confusion and delay on the Tribe's Reservation, where proposed activities often cross jurisdictional lines among the BIA, the Bureau of Land Management, and the U.S. Forest Service. In short, CEQ's 2020 Rule provides a meaningful and expanded role for the Tribe in the NEPA review process, not just with respect to Reservation activities, but also with respect to off-Reservation impacts that implicate Tribal cultural and environmental concerns.

## PARTICIPATION BY TRIBES IN CEQ'S RULEMAKING

A review of comments submitted to CEQ in response to the proposed rule updating NEPA procedures shows that approximately 120 federal recognized Indian tribes participated in the comment process. *See* Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, Comments, CEQ-2019-003, http://www.regulations.gov/docket.?D=CEQ-2019-0003. That level of participation represents approximately 20% of the 574 Indian tribes recognized by the United States. *See* BIA, Notice, Doc. No. 2020-01707, 85 Fed. Reg. 5462 (Jan. 30, 2020). Summaries of tribal comments and CEQ's responses are woven throughout CEQ's exhaustive 600-page compilation of responses to comments received by CEQ following CEQ's public notice of proposed rulemaking issued on January 10, 2020.  Final Rule Response to Comments RIN 03331-AAA03 (June 30, 2020), ID: CEQ-2019-720629, http://www.regulations.gov/docket?D=CEQ-2019-003. To be sure, the comments submitted by tribes do not reflect unanimity; however, as noted by CEQ, commenters expressed support for the expansion of the role of tribes and the invitation of tribal "participation, cooperation, and consultation on par with State and local jurisdictions . . . ." *Id.* at 46/603.  As stated by CEQ, "The final rule significantly expands coordination with Tribal governments and agencies, in furtherance of informed analysis of a proposed action's potential effects on Tribal lands, resources, and areas of historic significance." *Id.*

## NEPA'S APPLICATION TO INDIAN LANDS - CONGRESSIONAL TRENDS

Just as commenting tribes expressed support for updating NEPA regulations, a number of tribes and tribal organizations have requested that Congress create more efficient and tribally deferential alternatives to NEPA review of tribal land use decisions. In 2009, for example, one of the Tribe's elected officials appearing before the Senate Indian Affairs Committee suggested that

Congress consider "removing Indian lands from NEPA review, utilization of alternative tribal environmental review processes, and commanding expeditious review by Federal agencies involved in decisions affecting tribes or their lands." *Indian Energy and Energy Efficiency: Hearing Before the Sen. Comm. On Indian Affairs*, 111th Cong. 41 (2009) (statement of Steve Herrera, Tribal Council Member, Southern Ute Indian Tribe) (available at https://www.govinfo.gov/content/pkg/CHRG-111shrg56321/pdf/CHRG-111shrg56321.pdf).

Although Congress's response to Indian country NEPA concerns has not been a uniform exemption from NEPA, Congress has expanded the potential role that tribes may play in making decisions about their lands and displacing NEPA. The principal statutory mechanism for doing so has been through optional elimination of federal approval requirements for tribes who so elect; provided that they enact their own transactional codes, including tribal environmental review regulations, approved by the Secretary of the Interior. An early example of this approach involved the surface leasing of Navajo Nation trust lands. Navajo Nation Trust Land Leasing Act of 2000, Pub. L. No. 106-568, § 1201, 114 Stat. 2933 (codified at 25 U.S.C. § 415(e)).

Expanding on the Navajo Nation leasing model, in 2012, Congress opened to all tribes the option of surface leasing under tribal laws and procedures approved by the Secretary of the Interior. Helping Expedite Affordable and Responsible Tribal Homeownership Act of 2012, Pub. L. No. 112-151, 126 Stat. 1150 (codified at 25 U.S.C. § 415(h)) ("HEARTH Act"). Once a tribe's leasing laws and environmental review regulations are approved, the BIA no longer approves those transactions, thus eliminating NEPA compliance from the process. More than 50 tribes have received HEARTH Act approvals for surface leasing, and the Tribe's request for that

approval is pending.[4] U.S. Dep't of Interior, Bureau of Indian Affairs: *HEARTH Act of 2012,* bia.gov/bia/ots/hearth (last visited Sept. 7, 2020).

The Navajo Nation Trust Lands Leasing Act and the HEARTH Act are just two examples of post-NEPA enactments that encourage the establishment of tribal laws and regulations to review the impacts and alternatives to proposed tribal action as a potential replacement to NEPA. Another example is the Indian Tribal Energy Development and Self-Determination Act of 2005, as amended, codified at 25 U.S.C. § 3504. With respect to agricultural and forest land management Congress has enacted laws that sanction the development of tribal environmental resource and management policies that are binding on federal land managers, except when violative of applicable federal substantive law. American Indian Agricultural Resources Management Act of 1993, 25 U.S.C. §§ 3701-3746; National Indian Forest Resource Management Act of 1990, 25 U.S.C. §§ 3101-3120. Accordingly, CEQ's expanded deference to tribal governments and its invitation to tribes to participate as cooperating or joint lead agencies in NEPA review processes is consistent with a powerful, post-NEPA, federal policy shift embracing tribes as important governmental institutions.

## OVERBREADTH OF PRELIMINARY INJUNCTION

The Complaint in this case is an encyclopedic presentation of the Plaintiffs' activities and interests and a catalog of speculative injuries asserted to result from the formulative process and product embodied in CEQ's 2020 Rule. Pls.' Complaint, ECF No. 1. In essence Plaintiffs claim a vested right to a regulatory framework that will remain unchanged in perpetuity, a set of

---

[4] Obtaining BIA approval of tribal leasing codes and environmental regulations is not an expeditious exercise. More than a year ago, the Tribe transmitted its surface leasing code and its tribal environmental review policy to the Deputy Bureau Director of the BIA, but has yet to receive comment or approval. Letter from Chairman Christine Sage to Deputy Bureau Director dated Sept. 6, 2019.

procedures put in place more than 40 years ago, that, when combined with scores of guidance documents and thousands of court decisions, defies common understanding. The revisions reflected in CEQ's 2020 Rule attempt to simplify the processes for conducting NEPA reviews without mandating an outcome as to whether proposed agency actions will or will not proceed. *See* CEQ's Background, 85 Fed. Reg. 43,304-43,313. The revisions are an attempt to reduce the direct and indirect costs of prolonged indecision, which itself seems almost guaranteed as to large projects. *Id.* However, as explained by CEQ, improvement in the NEPA review process is critical "because tens of thousands of projects and activities are subject to NEPA every year, many of which are important to modernizing our Nation's infrastructure." 85 Fed. Reg. 43,305.

As addressed in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, the granting of a preliminary injunction is an extraordinary remedy, particularly when employed on a nationwide basis. Plaintiffs' allegations center on lands and projects located in the Southeast, and they reflect no apparent understanding of the important improvements that CEQ's 2020 Rule will bring to the Tribe in terms of expanded participation in NEPA review of projects that are critical to the development of the Reservation economy and to its membership. Plaintiffs' request for preliminary injunctive relief as to the entire rule, particularly when there has been no allegation of injury caused by provisions like those that expand the participation of tribes, is both overly broad and inequitable.

## CONCLUSION

The Tribe respectfully requests that the Court deny Plaintiffs' Motion for Preliminary Injunction.

Dated:  September 8, 2020

Respectfully submitted,

*/s/ Mark Churchill*
Mark H. Churchill, Esq.
VSB No. 42663
HOLLAND & KNIGHT, LLP
1650 Tysons Blvd., Suite 1700
Tysons, Virginia 22102
(703) 720-8094
mark.churchill@hklaw.com

Of Counsel:

David C. Smith, Esq.
SOUTHERN UTE INDIAN TRIBE
Director, Legal Department
P.O. Box 737
Ignacio, Colorado 81137
(970) 563-2140
dasmith@southernute-nsn.gov

Thomas H. Shipps, Esq.
MAYNES, BRADFORD, SHIPPS & SHEFTEL LLP
835 East Second Avenue, Suite 123
Durango, Colorado 81301
(970) 247-1755
tshipps@mbssllp.com

*Counsel to Amicus Curiae*
*Southern Ute Indian Tribe*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ Mark Churchill
Mark H. Churchill