**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE  DIVISION**

| | |
|---|---|
| **WILD VIRGINIA,** | ) |
| **VIRGINIA WILDERNESS COMMITTEE,** | ) |
| **UPSTATE FOREVER,** | ) |
| **SOUTH CAROLINA WILDLIFE FEDERATION,** | ) |
| **NORTH CAROLINA WILDLIFE FEDERATION,** | ) |
| **NATIONAL TRUST FOR HISTORIC** | ) |
| **PRESERVATION,** | ) |
| **MOUNTAINTRUE,** | ) |
| **HAW RIVER ASSEMBLY,** | ) |
| **HIGHLANDERS FOR RESPONSIBLE** | ) |
| **DEVELOPMENT,** | ) |
| **DEFENDERS OF WILDLIFE,** | ) |
| **COWPASTURE RIVER PRESERVATION** | ) |
| **ASSOCIATION,** | ) |
| **CONGAREE RIVERKEEPER,** | ) |
| **THE CLINCH COALITION,** | ) |
| **CLEAN AIR CAROLINA,** | ) |
| **CAPE FEAR RIVER WATCH,** | ) |
| **ALLIANCE FOR THE SHENANDOAH** | ) |
| **VALLEY, and** | ) |
| **ALABAMA RIVERS ALLIANCE,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Case No. |
| | )  3:20CV00045 |
| | ) |
| **COUNCIL ON ENVIRONMENTAL QUALITY,** | ) |
| **and** | ) |
| **MARY NEUMAYER IN HER OFFICIAL** | ) |
| **CAPACITY AS CHAIR OF THE** | ) |
| **COUNCIL ON ENVIRONMENTAL** | ) |
| **QUALITY,** | ) |
| | ) |
| Defendants, | ) |
| and | ) |

**AMERICAN FARM BUREAU FEDERATION,**     )
**AMERICAN FOREST RESOURCE COUNCIL,**  )
**AMERICAN FUEL & PETROCHEMICAL**     )
    **MANUFACTURERS,**                   )
**AMERICAN PETROLEUM INSTITUTE,**     )
**AMERICAN ROAD & TRANSPORTATION**  )
    **BUILDERS ASSOCIATION,**           )
**CHAMBER OF COMMERCE OF THE UNITED**  )
    **STATES OF AMERICA,**              )
**FEDERAL FOREST RESOURCE COALITION,**  )
**INTERSTATE NATURAL GAS ASSOCIATION**  )
    **OF AMERICA, and**                )
**NATIONAL CATTLEMEN'S BEEF**        )
    **ASSOCIATION,**                   )
                                   )
            Defendants-Intervenors,  )
                                   )
and                                 )
                                 )
**SOUTHERN UTE INDIAN TRIBE,**      )
                                 )
             Amicus Curiae.       )


## OPINION AND ORDER

    ARGUED:  Kimberley Hunter, Senior Attorney,  SOUTHERN ENVIRONMENTAL LAW CENTER, Chapel Hill, North Carolina, for Plaintiffs;  Jeffrey Bossert Clark, Assistant Attorney General, ENVIRONMENT AND NATURAL RESOURCES DIVISION, UNITED STATES DEPARTMENT OF JUSTICE,  Washington, D.C., for Defendants; Michael B. Kimberly, MCDERMOTT WILL & EMERY LLP, Washington, D.C., for Defendants-Intervenors. ON BRIEF: Sam Evans, Nicholas S. Torrey, Megan Kimball, and Kristin Davis, SOUTHERN ENVIRONMENTAL LAW CENTER, for Plaintiffs; Jonathan Brightbill, Principal Deputy Assistant Attorney General, Paul Salamanca, Senior Counsel, Barclay T. Samford, Senior Attorney, ENVIRONMENT AND NATURAL RESOURCES DIVISION, UNITED STATES DEPARTMENT OF JUSTICE, and Krista Consiglio Frith, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, for Defendants; Joshua D. Rogaczewski, MCDERMOTT WILL & EMERY LLP, for Defendants-Intervenors; and Mark H. Churchill, HOLLAND & KNIGHT, LLP, David

*C. Smith, Director, Legal Department, SOUTHERN UTE INDIAN TRIBE, and Thomas H. Shipps, MAYNES, BARADFORD, SHIPPS & SHEFTEL LLP, for Amicus Curiae.*

The plaintiffs' action, brought under the provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706,  seeks to invalidate the final rule (Rule) issued by defendant Council on Environmental Quality (CEQ), 85 Fed Reg. 43,304 (July 16, 2020), revising the regulations for federal agencies to follow in implementing the National Environmental Policy Act of 1969 (NEPA or the Act), 42 U.S.C. §§ 4331–4347.  The Rule is effective September 14, 2020, and now before the court is the plaintiffs' Motion for Preliminary Injunction or Stay.  The motion, filed August 18, 2020, has been briefed and argued on an expedited basis and is ripe for decision.  For the reasons that follow, I decline to issue a preliminary injunction or stay.[1]

## I.

The court exercises its discretion in determining whether to grant a preliminary injunction.  *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013).  But that discretion must be "within the applicable rules of law or equity."  *Direx Isr., Ltd v. Breakthrough Med. Corp.*, 952 F.2d 802, 814 (4th Cir. 1992).  To obtain a

---

[1]   In addition to opposing the temporary relief requested, the defendants and intervenors-defendants have filed motions to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  These motions have also been briefed and argued, but I have yet to rule on them.

preliminary injunction, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Each factor must be "satisfied as articulated." *The Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 347 (4th Cir. 2009), *vacated and remanded on other grounds*, 559 U.S. 1089 (2010), *aff'd, The Real Truth About Obama, Inc. v. FEC,* 607 F.3d 355 (4th Cir. 2010) (per curiam).[2]

## II.

President Nixon signed NEPA into law on January 1, 1970.  In the Act, Congress expressly recognized that the federal government is to "use all practicable means, consistent with other essential considerations of national policy" so the nation may:

> (1) fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;
>
> (2) assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings;
>
> (3) attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

---

[2]   The plaintiffs agree that the standard for a stay of the Rule under the APA is the same as the standard for a preliminary injunction.  Mem. Supp. Mot. Prelim. Inj. or Stay 27, ECF No. 30-1.

(4) preserve important historic, cultural, and natural aspects of our national heritage, and maintain, wherever possible, an environment which supports diversity and variety of individual choice;

(5) achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

(6) enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources.

42 U.S.C. § 4331(b). To do so, NEPA mandates that federal agencies, to the fullest extent possible, use a systematic approach in making decisions that may impact the environment, enact procedures to ensure "unquantified environmental amenities and values" are considered, and include detailed statements in "every recommendation or report on proposals for legislation or other major Federal actions significantly affecting the quality of the human environment" on topics including the environmental impacts of proposals, any adverse environmental effects which cannot be avoided, and alternatives. *Id.* § 4332.

NEPA created CEQ, located within the Executive Office of the President, to assist with implementation of the Act. *Id.* § 4342. In 1978, CEQ published regulations creating procedures for federal agency implementation of NEPA. 40 C.F.R. §§ 1500.1–1508.28 (2019). Prior to 2020, these regulations had been amended only twice. In 1986, CEQ amended one regulation to require "all federal agencies to disclose the fact of incomplete or unavailable information when evaluating reasonably foreseeable significant adverse impacts on the human

environment in an EIS, and to obtain that information if the overall costs of doing so are not exorbitant." 51 Fed. Reg. 15,618 (Apr. 25, 1986) (codified at 40 C.F.R. § 1502.22). In 2005, CEQ amended another regulation to update the filing address for environmental impact statements and other in-person and commercial mail deliveries. 70 Fed. Reg. 41,148 (July 18, 2005) (codified at 40 C.F.R. § 1506.9). Thus, previous amendments to the regulations were relatively minor.

In 2017, President Trump issued Executive Order 13807, which called on CEQ "to enhance and modernize the Federal environmental review and authorization process." Exec. Order No. 13807, 82 Fed. Reg. 40,463 (Aug. 15, 2017). The asserted purpose of the executive order was to "change the way [the federal government] processes environmental reviews and authorization decisions" to strengthen the economy and cure alleged inefficiencies in infrastructure decisions. *Id.* Accordingly, CEQ issued an initial list of actions a month later. Initial List of Actions To Enhance and Modernize the Federal Environmental Review and Authorization Process, 82 Fed. Reg. 43,226 (Sept. 14, 2017). CEQ then published an advance notice of proposed rulemaking in June 2018, which allowed it to solicit public comment on potential revisions to the NEPA process and the scope of NEPA review. Update to the Regulations for Implementing the Procedural Provisions of the National Environmental Policy Act, 83 Fed. Reg. 28,591 (June 20, 2018). The public submitted over 12,000 comments to the advance notice. Rulemaking Docket

CEQ-2018-0001, https://beta.regulations.gov/docket/CEQ-2018-0001 (last visited Sept. 10, 2020).

In January 2020, CEQ published a notice of proposed rulemaking. Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 1,684 (Jan. 10, 2020). The notice included numerous proposed changes and additions to the existing NEPA regulations. *Id.* at 1,691–1,730. For example, CEQ proposed changing the term "possible" to "practicable" in several sections, *id.* at 1,692, adding a new section on categorial exclusions to "address in more detail the process by which an agency considers whether a proposed action is categorically excluded under NEPA," *id.* at 1,696, establishing a one-year time limit for environmental assessments and a two-year time limit on environmental impact statements, *id.* at 1,699, and reinforcing page limits for environmental impact statements and requiring approval from a senior agency official for statements exceeding 300 pages, *id.* at 1,700. Other proposed revisions consisted of definitional changes, including adding language to the "effects" or "impacts" definition in § 1508.1 stating that "[e]ffects should not be considered significant if they are remote in time, geographically remote, or the product of a lengthy causal chain" and noting that cumulative effects analyses are no longer required. *Id.* at 1,729. CEQ also proposed additions to the regulation

regarding the specificity of comments on environmental impact statements.  *Id.* at 1703–04.

CEQ held two public hearings on the proposed rulemaking in February 2020, and the public submitted over 1.1 million comments.  Rulemaking Docket CEQ-2019-0003, https://beta.regulations.gov/docket/CEQ-2019-0003 (last visited Sept. 10, 2020).  On June 30, 2020, CEQ published a 600-page response to the comments, where it addressed the general comments regarding the proposed rule, as well as comments about changes to specific sections.  Council on Environmental Quality, *Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act Final Rule Response to Comments RIN 0331-AA03,* (June 30, 2020), https://ceq.doe.gov/docs/laws-regulations/ceq-final-rule-response-to-comments-2020-06-30.pdf.  CEQ then published the Rule establishing the new NEPA regulations in July 2020.  The Rule includes many of the changes and additions included in the notice of proposed rulemaking, including the changes and additions discussed above.

### III.

The APA confers jurisdiction to review an agency's decision.  *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999) (stating since "NEPA itself [does not provide] a private right of action, all of these claims lie under the [APA]").  The agency's rule must be upheld unless it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." 5 U.S.C.§ 706(2)(A).

The plaintiffs allege the Rule is invalid for a number of reasons. For example, the plaintiffs assert that the Rule is inconsistent with NEPA because CEQ improperly (1) removes the requirement that agencies consider cumulative and indirect impacts on the environment, (2) removes the requirement that agencies evaluate all reasonable alternatives, (3) requires actions to be deemed "major" before any environmental effects are to be considered, (4) allows projects to proceed during the NEPA process, and (5) diminishes the input from those with qualitative, rather than technical, knowledge. The plaintiffs also assert that CEQ is not entitled to *Chevron* deference because the revisions directly conflict with the "unambiguously expressed intent of Congress." Mem. Supp. Mot. Prelim. Inj. 39, ECF No. 30-1 (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). Furthermore, the plaintiffs allege that CEQ failed to adequately consider relevant factors during the rulemaking process, rendering the revisions arbitrary and capricious. The plaintiffs specifically assert that CEQ improperly relied on the goal of reducing delay, failed to consider the existing regulatory scheme as a baseline for evaluating the effects of the new Rule, failed to adequately consider how the changes will harm environmental quality, and failed to consider environmental justice in revising the regulations. The plaintiffs also contend that CEQ failed to consider the

reliance interests of agencies, citizens, and states on the existing regulatory scheme. Finally, the plaintiffs assert that CEQ failed to provide a plausible explanation for its changes and failed to consider less harmful alternatives such as additional funding and oversight.

The defendants, on the other hand, contend that the plaintiffs' arguments fail for lack of ripeness and standing. The defendants specifically argue that the plaintiffs cannot establish irreparable injury without subsequent agency action implementing and applying the Rule and that plaintiffs' procedural injury argument is baseless because CEQ properly considered the plaintiffs' comments. The defendants also argue the plaintiff's claim that the Rule is inconsistent with NEPA is meritless because CEQ's interpretations of NEPA are entitled to deference, the Rule's revised definitions are examples of the reasonable construction of ambiguous terms, the Rule will not allow projects to proceed in violation of the Act, and the Rule promotes public participation in a way that is consistent with NEPA by providing for detail and specificity in comments if possible. The defendants also argue that the rulemaking process was proper under the APA because CEQ properly assessed the environmental impacts of the Rule, considered reliance interests, and provided reasonable explanations for the revisions.

IV.

While  the movants need not show a certainty of success, they must make a
"clear showing" that they are likely to succeed on the merits as a prerequisite to a
preliminary injunction.  *Pashby v. Delia*, 709 F.3d at 321.   The plaintiffs here may
ultimately succeed in this case, but at this point they have not made that clear
showing.  While the Rule and its relevant documents speak for themselves, it is not
unlikely that interpretative testimony and expert opinion would be required for the
proper determination of the validity of the Rule.    Moreover, the jurisdictional
standing and ripeness issues raised in opposition to the request for an injunction and
in the pending Rule 12(b)(1) motions to dismiss may very well require evidence.
*See Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 506 (4th Cir. 2015).

Finally, as recently noted by the Fourth Circuit, even assuming the power of
a single district judge to issue a nationwide preliminary injunction, it should be
restricted "to the most exceptional circumstances," particularly since such cases
typically involve "rushed judicial decisionmaking, often under immense time
pressure, based on expedited briefing, and in the absence of a factual record."  *CASA
de Md., Inc. v. Trump*, No. 19-2222, 2020 WL 4664820, at *26, *27 (4th Cir. Aug.
5, 2020).[3]

_____

[3]  Three other cases alleging the invalidity of the Rule have been filed, *California v.
CEQ*, No. 3:20-cv-06057-RS (N.D. Cal. filed Aug. 28, 2020); *Env't Just. Health All. v.
CEQ*, No. 1:20-cv-06143-CM (S.D.N.Y. filed Aug. 6, 2020); *Alaska Cmty. Action on*

V.

For the foregoing reasons, it is **ORDERED** that the Motion for Preliminary

Injunction or Stay, ECF No. 30, is DENIED.


ENTER:   September 11, 2020

/s/  JAMES P. JONES
United States District Judge


_____

*Toxics v. CEQ*, No. 3:20-cv-05199-RS (N.D. Cal. filed July 29, 2020), but it appears in none have the plaintiffs sought a preliminary injunction or stay.