## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Wild Virginia, Virginia Wilderness Committee, Upstate Forever, South Carolina Wildlife Federation, North Carolina Wildlife Federation, National Trust for Historic Preservation, Mountaintrue, Haw River Assembly, Highlanders for Responsible Development, Defenders of Wildlife, Cowpasture River Preservation Association, Congaree Riverkeeper, The Clinch Coalition, Clean Air Carolina, Cape Fear River Watch, Alliance for the Shenandoah Valley, *and* Alabama Rivers Alliance, | |
| *Plaintiffs*, | Civ. No. 3:20-cv-45-JPJ |
| v. | Hon. James P. Jones |
| Council on Environmental Quality *and* Mary Neumayr, in her official capacity as Chair of the Council on Environmental Quality, | |
| *Defendants*, | |
| American Farm Bureau Federation, American Forest Resource Council, American Fuel & Petrochemical Manufacturers, American Petroleum Institute, American Road & Transportation Builders Association, Chamber of Commerce of the United States of America, Federal Forest Resource Coalition, Interstate Natural Gas Association of America, *and* National Cattlemen's Beef Association, | |
| *Defendants-Intervenors*. | |

## BUSINESS ASSOCIATIONS' REPLY IN SUPPORT
## OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT

MICHAEL B. KIMBERLY*
JOSHUA D. ROGACZEWSKI
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

*Attorneys for Defendants-Intervenors*

* *pro hac vice*

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Argument ............................................................................................................... 1

    A.   The NEPA Rule is not arbitrary or capricious ............................................ 1

        1.   CEQ did not ignore relevant factors .......................................... 1

        2.   CEQ gave "good reasons" for its decision to change the regulations and did not ignore relevant evidence ................................................................. 5

        3.   Plaintiffs' argument concerning reliance interests is baseless .................................. 6

        4.   CEQ was not required to consider Plaintiffs' suggested alternatives ........................ 8

    B.   The NEPA Rule is consistent with the statutory text ....................................... 9

        1.   The rule's proximate cause standard is required by binding precedent ..................... 9

        2.   The rule's direction to consider "reasonable alternatives" comports with NEPA ..................................................................................................... 12

Conclusion ........................................................................................................... 13

i

## TABLE OF AUTHORITIES

**Cases**

*Aransas Project v. Shaw*,
 775 F.3d 641 (5th Cir. 2014) ...................................................................10

*Audubon Naturalist Soc'y v. U.S. Dep't of Transp.*,
 524 F. Supp. 2d 642 (D. Md. 2007) ..........................................................13

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*,
 515 U.S. 687 (1995) ..................................................................................10

*Bank of Am. Corp. v. City of Miami*,
 137 S. Ct. 1296 (2017) ................................................................................9

*Bowen v. Georgetown Univ. Hosp.*,
 488 U.S. 204 (1988) ....................................................................................6

*Chevron, U.S.A., Inc. v. NRDC*,
 467 U.S. 837 (1984) ....................................................................................1

*Dep't of Transp. v. Public Citizen*,
 541 U.S. 752 (2004) ..............................................................................9-12

*DHS v. Regents of the University of California*,
 140 S. Ct. 1891 (2020) ...........................................................................3, 8

*Encino Motorcars, LLC v. Navarro*,
 136 S. Ct. 2117 (2016) ...........................................................................2, 7

*F.C.C. v. Fox Television Stations, Inc.*,
 556 U.S. 502 (2009) ....................................................................................2

*Hemi Group, LLC v. City of New York*,
 559 U.S. 1 (2010) (plurality opinion) ........................................................9

*Long Island Care at Home, Ltd. v. Coke*,
 551 U.S. 158 (2007) ....................................................................................2

*Metropolitan Edison Company v. People Against Nuclear Energy*,
 460 U.S. 766 (1983) ..............................................................................9-12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ......................................................................................8

*Nat. Res. Def. Council, Inc. v. Callaway*,
 524 F.2d 79 (2d Cir. 1975) .......................................................................12

*Nat. Res. Def. Council, Inc. v. Morton*,
 458 F.2d 827 (D.C. Cir. 1972) ..................................................................13

*Robertson v. Methow Valley Citizens Council*,
 490 U.S. 332 (1989) ....................................................................................4

**Statutes, Rules, and Regulations**

40 C.F.R. § 1502.14 (2018) ...........................................................................11

40 C.F.R. § 1502.14(a) (2020) .......................................................................13

46 Fed. Reg. 18,026 (Mar. 23, 1981) .............................................................12

85 Fed. Reg. 43,304 (July 16, 2020) ...........................................................4, 5

42 U.S.C. § 4332 ...................................................................................9, 11, 12

Plaintiffs maintain that before making any change to the original 1978 regulations implementing NEPA, CEQ was required to consider the environmental effects of the change, even with respect to changes grounded in Supreme Court precedent and the best reading of the statutory text; to account for Plaintiffs' so called "reliance interests" (which is to say, their preference to keep doing business under the old regulatory regime); and to consider numerous far-afield alternatives to amending the regulations.

Plaintiffs vastly overstate the requirements of the APA, under which CEQ was required only to acknowledge that it was changing its regulations and give a reasoned explanation for doing so. The NEPA Rule easily cleared that bar. The agency explained at length why the Rule's updated procedures were more faithful to NEPA's text and would improve the efficiency and administrability of the NEPA review process. When, as here, "a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail." *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 866 (1984). The Business Associations' cross-motion for summary judgment accordingly should be granted.

## ARGUMENT

### A.    The NEPA Rule is not arbitrary or capricious

The NEPA Rule satisfied the APA's requirement of reasoned decisionmaking. CEQ properly explained that its changes to the 1978 regulations would align with the best reading of the statutory text and make the NEPA review process more efficient. Nothing further was needed to justify the NEPA Rule under the APA.

#### *1.    CEQ did not ignore relevant factors*

Plaintiffs contend that CEQ failed to properly consider the impact of the NEPA Rule on the environment. As the Business Associations explained in their principal brief (at 13-17), that contention is faulty for three reasons: (1) an agency need not expressly address practical impacts

1

when it changes its policy to align with Supreme Court precedent and the best reading of the statutory text; (2) the law did not require CEQ to conclude that the environmental effect of the NEPA Rule would be superior to that of the 1978 regulations; and (3) in any event, CEQ reasonably concluded that the NEPA Rule, which is a procedural rather than substantive requirement, is not expected to have any impact on substantive environmental outcomes. Plaintiffs' responses are not persuasive.

    **a.**  As to the first point, Plaintiffs make the implausible claim that even when an agency's old regulations conflict with controlling judicial interpretations of the statutory text, the agency still must consider the practical impacts of a policy change before amending its regulations to conform to the law. That is not a defensible position. When an agency concludes that a statute, as construed by the Supreme Court, requires a change to its regulations, subsidiary policy rationales are not relevant. That conclusion is fundamental to the APA itself, which "Congress passed . . . to ensure that agencies follow constraints even as they exercise their powers." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 537 (2009). Thus, when an agency changes its existing regulations to ensure that they are "more consistent with statutory language" adopted by Congress, that is *and must be* a sufficient explanation, standing alone, to support the change. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 175 (2007) (quotation marks omitted). Agencies must act within the limits of their organic statutes, as drafted by Congress and construed by the Supreme Court.

    Contrary to Plaintiffs' reading, *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016), does not require a policy analysis of a change in regulations that is intended to conform the regulation to the statutory text. On the contrary, *Encino Motorcars* acknowledged that "an agency may justify its policy choice by explaining why that policy 'is more consistent with statutory language' than alternative policies." *Id.* at 2127 (quoting *Long Island Care at Home*, 551 U.S. at 175). The problem in *Encino Motorcars* was that the agency had merely asserted that its new

regulation was more consistent with the statute without actually explaining why that was so. *Id.* Here, by contrast, CEQ gave a detailed explanation of why the NEPA Rule was more consistent with NEPA's text than with the 1978 regulations. No more was required.

*DHS v. Regents of the University of California*, 140 S. Ct. 1891 (2020), also does not suggest otherwise. In *Regents*, DHS rescinded the Deferred Action on Childhood Arrivals (DACA) program, based on the Attorney General's conclusion that a particular element of the DACA program was unlawful. The Supreme Court held that DHS's decision was arbitrary and capricious because the Attorney General's analysis of the statutory text applied only to one element of the program; it did not apply to a second, logically distinct element of the program. *Id.* at 1911. Thus, to rescind the second component of DACA, DHS was required to give additional justification beyond the legal reasons cited for rescinding the first component. *Id.* at 1912.

*Regents* thus stands only for the unremarkable proposition that regulatory changes that *cannot* be explained on purely legal grounds require an adequate policy explanation. The Supreme Court did not suggest in that case that analyses of policy consequences or "reliance interests" are required for changes made for legal reasons, like ensuring conformity with statutory text. Plaintiffs' bid to impose those unnecessary procedural requirements on CEQ should be rejected.

**b.**  Plaintiffs double down on their assertion that in the Regulatory Impact Analysis (RIA) prepared to comply with Executive Orders 12,866 and 13,563, CEQ was required to "acknowledge [a] baseline of benefits from the 1978 regulations" and determine whether the practical consequences of the NEPA Rule were justified in comparison to that "baseline." Pls. Mem. (Dkt. 132) at 13. As we explained in our principal brief (at 16), however, the problem with that argument is simple: The executive orders that prompted the RIA do not give Plaintiffs or other members of the public any enforceable rights.Plaintiffs relegate this issue to a footnote, where they assert that they have "not challenged the RIA itself" and instead are using the RIA as mere "evidence" that CEQ's reasoning was insufficient. Regardless of what labels are used to describe it, Plaintiffs'

3

claim is one to enforce the provisions of Executive Orders 12,866 and 13,563, which Plaintiffs say require an analysis of costs and benefits against a specific baseline. The text of those orders makes clear that such claims are not actionable.

**c.** Plaintiffs say that CEQ erred in concluding that the NEPA Rule will not have adverse environmental effects, asserting that it "defies reality and common sense" to say otherwise. Pls. Mem. 13. But as CEQ explained in the NEPA Rule, NEPA is a procedural statute that does not dictate or constrain any agency's substantive policy choices. There is no reason to conclude that changes to NEPA's procedural framework will lead to substantive environmental harm. Plaintiffs argue that "NEPA's 'procedures are almost certain to affect the agency's substantive decision.'" Pls. Mem. 2 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)). But as we have previously pointed out, *Robertson*'s point was simply that the *general* process of NEPA review will tend to inform how an agency decides to proceed with an action—not that any change to NEPA procedures will lead to a corresponding change in environmental outcomes. That is why *Robertson* acknowledged in nearly the same breath that NEPA "does not mandate particular results." 490 U.S. at 350.

Plaintiffs also suggest that environmental impacts are likely in light of CEQ's prediction that "the changes will reduce work for project applicants, provide clarity, reduce litigation risk, and speed project delivery." Pls. Mem. 13. That is incorrect. CEQ has never contended that the NEPA Rule will permit impacts on the environment that were previously prohibited. Rather, CEQ's reasoning was that the NEPA Rule would clarify how CEQ's regulations apply in light of the statute and Supreme Court precedent and simplify the process of NEPA review—with the result that agencies will be able to complete NEPA reviews more efficiently and that agencies' final analyses will be less vulnerable to litigation intended to hold up projects. 85 Fed. Reg. 43,304, 43,313-43,314 (July 16, 2020).

Plaintiffs insist that by narrowing certain regulatory definitions and exempting certain kinds of actions from NEPA review, the NEPA Rule will lead to "much less analysis" of federal actions overall, which will be bound to have environmental impacts. Pls. Mem. 13. Even if Plaintiffs were right that there will be "less analysis" overall under the NEPA Rule, it would not follow that there will necessarily be an adverse impact on the environment. Indeed, CEQ adopted the Rule in no small part because the analysis conducted under the 1978 regulations was duplicative and largely "unnecessary." 85 Fed. Reg. at 43,306. For example, sorting effects into buckets labeled "direct," "indirect," and "cumulative" and analyzing effects that are temporally and causally remote from the proposed action consume significant agency resources, while doing little to inform the agency's decisionmaking process. It was reasonable for CEQ to conclude that revising the regulations to eliminate such unhelpful distinctions would not compromise or impair NEPA's function.

## 2. CEQ gave "good reasons" for its decision to change the regulations and did not ignore relevant evidence

Plaintiffs next argue that CEQ's stated reasons for amending the 1978 regulations—improving clarity, increasing efficiency, and reducing unnecessary delays—are inconsistent with the evidence. That is simply wrong. As we explained in our principal brief, there was copious evidence in the administrative record demonstrating that the 1978 regulations produced sprawling NEPA reviews that consumed years and many volumes' worth of analysis, only to be followed by protracted litigation over the agency's NEPA compliance. And as our brief also pointed out (at 18-22), none of Plaintiffs' evidence that project delays are purportedly caused by other factors outside of NEPA actually proves that proposition.

Plaintiffs do not meaningfully dispute these showings. Instead, they say that even if "NEPA regulations play *some* role in project delivery timeframes," CEQ has not "show[n] that the Rule will ameliorate the problem." Pls. Mem. 17. That blinks reality. It is self-evident that clarifying

key terms, aligning relevant provisions with the statutory text, and setting clearer standards for how comments should be raised and exhausted will make the process more efficient and make it easier for courts to resolve any lingering disputes that give rise to litigation. That would be true even if Plaintiffs had shown (which they did not) that other factors also contribute to delays of projects subject to NEPA. A regulatory change like the NEPA Rule need not be a perfect solution to be a reasonable one.

Plaintiffs also repeat their argument that the NEPA Rule will itself lead to further delays because it introduces "new confusion" about the meaning of its own terms, which will have to be "litigated on a case-by-case basis." Pls. Mem. 18. But as our principal brief pointed out (at 22), the possibility exists with any regulatory change—and CEQ considered it, concluding that any short-term uncertainty caused by the rule would be outweighed by greater clarity in the long term. Plaintiffs have no answer to this point.

### 3.      *Plaintiffs' argument concerning reliance interests is baseless*

As we demonstrated in our principal brief (at 22-24), Plaintiffs' claim that CEQ failed to consider "reliance interests" is a mismatch for the facts of this case. The reliance interests that agencies must consider when changing regulations are "substantial past investment[s] incurred in reliance upon the prior rule," such as contractual obligations, property purchases, capital invest-ments, or other major commitments. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 220 (1988) (Scalia, J., concurring). Plaintiffs have not alleged these kinds of reliance interests. Instead, their claimed reliance interests boil down to their preference to continue conducting environmental advocacy under the old regulations, rather than under the NEPA Rule. That is not a valid "reliance interest" for APA purposes.

Plaintiffs resist this conclusion, arguing that any "change that interferes with an organiza-tion's operations . . . constitutes an important interest the agency must consider." Pls. Mem. 19. But virtually every change in agency regulations would fail that test: When an agency amends its

regulations, that change will almost always require members of the public to change how they deal with the agency going forward. Thus, a mere change to organizational "operations" that does not disturb binding past commitments of resources cannot be enough to show that an agency regulation impinges on "reliance interests."

Again, *Encino Motorcars* is not to the contrary. The Court stated that the regulation there implicated reliance interests because under the agency's new policy, auto dealers and service advisors would have had to make "systemic, significant changes" to "compensation arrangements" that they had already "negotiated" and contractually agreed to against the backdrop of the prior regime. 136 S. Ct. at 2126. Plaintiffs have not shown that they have any such sunk costs of that sort at stake. Rather, their claim is that under the NEPA Rule, they will have to expend more resources *in the future* to accomplish their goals. *See, e.g.*, Dkt. 89-2 (Stangler Decl.) ¶ 7 (stating that under the NEPA Rule, declarant's organization "may need to hire experts to help us draft comments" on future projects); Dkt. 30-52 (Aydlett Decl.) ¶ 14 (expressing concern that under the NEPA Rule, "it will be more difficult for me to participate in the NEPA process for [a particular] project moving forward"). That is not a "reliance" interest; it is simply inertia.[1]

Nor, as our principal brief explained (at 24), does the fact that states may wish to amend their own laws in response to the NEPA Rule show that the rule affects reliance interests. Again, that possibility exists whenever an agency amends regulations that touch on an area of state concern, and it does not show that states have vested reliance interests in any investments or other arrangements under the old regulations. Plaintiffs have no real response to this point. They argue that "many state environmental policy acts will be unable to fill the void created by the Rule[]"

---

[1]    Plaintiffs assert in passing that because the NEPA Rule "can" be applied to ongoing projects, they "*risk* wasting the investment of resources they have put into NEPA advocacy for ongoing and unfinished projects." Pls. Mem. 21 (emphasis added). But they do not cite anything to suggest that this "risk" will materialize or explain why their investment in advocacy will go to waste if the NEPA Rule is in fact applied to a pending project.

because NEPA will still apply "in reduced form" to federal actions, precluding state regulation. Pls. Mem. 23. But that is not a reliance interest—again, it is simply an argument that Plaintiffs and certain state governments prefer the state of the world under the 1978 regulations, as opposed to what they perceive to be a "reduced" NEPA Rule. Such policy disagreements are not the stuff of a successful APA challenge.

### 4.   *CEQ was not required to consider Plaintiffs' suggested alternatives*

Plaintiffs repeat their argument that, before adopting the NEPA Rule, CEQ was required to consider a host of implausible alternatives to the rule, many of which are outside CEQ's power to implement. As we explained in our principal brief (at 25), however, agencies are not required to broadly consider alternatives to their proposed action before acting. Rather, *State Farm* and its progeny establish a limited requirement to consider alternatives, which applies in narrow circumstances—when an agency's existing regulations consist of multiple parts that could each stand independently. In that special situation, where "a regulation requires regulated parties to do either A or B, and the agency determines that A is not effective after all, it must consider whether requiring B alone would be effective, before rescinding the entire rule." Intervenors' Mem. 25. Thus, if an agency rule requires cars to have automatic seatbelts or airbags, and the agency later determines that automatic seatbelts are ineffective, it should consider requiring airbags alone before rescinding the entire rule. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983). Or if an agency program grants two kinds of benefits, and the agency later concludes that the first benefit is unlawful, it should consider retaining the second benefit before rescinding the program in its entirety. *Regents*, 140 S. Ct. at 1913.

Plaintiffs insist that their proposed alternatives fit within the *State Farm* framework because their preferred approach to amending the 1978 regulations would have "address[ed] the supposed problems CEQ identified more directly and effectively." Pls. Mem. 23. But that is not the test. Rather, *State Farm* would apply only if CEQ had rescinded its NEPA framework without

considering the alternative of keeping part of that framework in place. That does not describe this case, and Plaintiffs' complaints about unexamined alternatives are therefore misplaced.

**B.      The NEPA Rule is consistent with the statutory text**

Plaintiffs are wrong that the NEPA Rule is inconsistent with the statutory text. CEQ's interpretations of the statute's provisions are either compelled by Supreme Court precedent or otherwise the best reading of the statutory text.

### 1.      The rule's proximate cause standard is required by binding precedent

Plaintiffs persist in the view that the statute's vague preamble ("to the fullest extent possible"), coupled with the statute's directive to evaluate "any adverse environmental effects" and "any environmental impact" of the proposed action (42 U.S.C. § 4332(C)), requires consideration of all effects that are "reasonably foreseeable," even if they are "cumulative or later in time." Pls. Mem. 27-28. But the Supreme Court's precedents foreclose that reading. The Court held in *Public Citizen* that "NEPA requires a reasonably close causal relationship between the environmental effect and the alleged cause" and "analogized this requirement to the 'familiar doctrine of proximate cause from tort law.'" *Dep't of Transp. v. Public Citizen*, 541 U.S. 752, 767 (2004) (quotation marks omitted). And as the Court has made clear time and again, "foreseeability alone does not ensure the close connection that proximate cause requires." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017). On the contrary, a causal link "that is too remote, purely contingent, or indirect is insufficient" to make an agency action the proximate cause of a particular effect, no matter how foreseeable that effect may be. *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (plurality opinion) (cleaned up).

Plaintiffs say that *Public Citizen*'s holding that an agency need not consider all foreseeable effects applies only when the underlying agency action is mandatory, but not when the agency has a choice. Pls. Mem. 29. The Supreme Court's analysis was not so limited. Its proximate-cause holding was an unbounded interpretation of the statutory words "environmental effect" and

"environmental impact," and proximate cause principles must be understood to apply to *all* NEPA reviews. That was the Court's conclusion in *Metropolitan Edison Company v. People Against Nuclear Energy*, 460 U.S. 766 (1983), where it held that "the terms 'environmental effect' and 'environmental impact' in § 102 [of NEPA should] be read to include a requirement of a reasonably close causal relationship between a change in the physical environment and the effect at issue." *Id.* at 774.

For the same reason, Plaintiffs are wrong that *Public Citizen*'s proximate-cause require-ment applies only to "non-environmental" effects. Pls. Mem. 28. To be sure, the Supreme Court's first case applying the proximate-cause requirement to NEPA (*Metro. Edison*) involved non-environmental effects—namely, the possible psychological injuries to residents in the vicinity of a nuclear plant. But, again, the Court's holding was that the proximate cause standard is implied in NEPA's definition of what constitutes an environmental "effect." 460 U.S. at 774. There is no principled way to interpret that holding other than that proximate cause is required under NEPA for *any* effect, whether environmental or nonenvironmental. Nor is there anything unusual about applying proximate cause to environmental effects. *See, e.g.*, *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 709 (1995) (O'Connor, J., concurring) (in an Endangered Species Act case, explaining that "the regulation's application is limited by ordinary principles of proximate causation, which introduce notions of foreseeability"); *Aransas Project v. Shaw*, 775 F.3d 641, 656 (5th Cir. 2014) ("Proximate cause and foreseeability are required to affix liability for ESA violations.").

*Public Citizen* itself confirms this point. The effects at issue there were environmental effects—*i.e.*, the emissions, noise, and other environmental impacts that might result from allowing Mexican motor carriers to operate in the United States. If Plaintiffs were right that *Metro. Edison*'s holding was limited to "non-environmental" effects, the *Public Citizen* Court would have distinguished *Metro. Edison* on that basis. It did not. Instead, it did the opposite, applying *Metro.*

*Edison* and confirming that "NEPA requires a reasonably close causal relationship between [an] *environmental effect* and the alleged cause." *Public Citizen*, 541 U.S. at 767 (emphasis added) (quotation marks omitted).[2]

The out-of-circuit cases cited at pages 29-30 (and note 10) of Plaintiffs' opposition do not call for a different result. That is not least because Plaintiffs mis-describe what the NEPA Rule accomplishes: They say it affirmatively forbids consideration of effects that would have been deemed "indirect" or "cumulative" under the 1978 regulations, but it does not. Rather, it merely clarifies that proximate cause is the test for determining what effects must be considered. Some "indirect" and "cumulative" effects will meet that standard, and some will not. By contrast, Plaintiffs' position that agencies must *always* consider all "indirect" or "cumulative" effects, even if agency action is not the proximate cause of those effects, directly contradicts *Public Citizen*. Because CEQ had no choice but to follow *Public Citizen*, the NEPA Rule must be upheld.

Plaintiffs complain that, under the proximate cause standard, agencies will not have a "full picture of the effects that could be avoided with the decision at issue." Pls. Mem. 30. But that assumes the very premise that *Metro. Edison* and *Public Citizen* rejected—that any effect that is remotely foreseeable is one that Congress necessarily intended to be reviewed. Just as the proximate cause doctrine in tort law holds that certain foreseeable consequences are not the

---

[2]   Plaintiffs are simply wrong to assert that *Metro. Edison* held that environmental effects are a "different case" from nonenvironmental effects for purposes of the proximate cause requirement. Pls. Mem. 29 (quotation marks omitted). The quoted footnote from *Metro. Edison* was addressing a different issue. The *Metro. Edison* Court held that psychological injuries caused by the *risk* of a nuclear accident were not proximately caused by any change in the environment, and thus were irrelevant under NEPA, because "a *risk* of an accident is not an effect on the physical environment." 460 U.S. at 775. But in the quoted footnote, the Court noted that it would be a "different case" if an agency were "asked to consider effects that will occur if a risk is realized, for example, if an accident occurs." *Id.* at 775 n.9. The Court was thus distinguishing between effects that result from unrealized risks of environmental change (which NEPA does not cover) and effects that result if risks materialize (which NEPA may cover if they satisfy proximate cause). It was *not* distinguishing between environmental and nonenvironmental effects, as *Public Citizen* confirmed.

defendant's legal responsibility, *Metro. Edison* and *Public Citizen* hold that certain foreseeable effects of actions that are not within the agency's statutory responsibility may be excluded from its NEPA reviews.

### 2. *The rule's direction to consider "reasonable alternatives" comports with NEPA*

Plaintiffs' other statutory argument, that NEPA requires consideration of all "reasonable alternatives" to a proposed action, is likewise wrong. The statutory text requires only that an agency consider "alternatives to the proposed action." 42 U.S.C. § 4332(C)(iii). There is simply no way to read that generic instruction as an ironclad mandate that every conceivable and feasible alternative be considered. Nor has CEQ ever read the statute that way. On the contrary, CEQ guidance has made clear for decades that even under the 1978 regulations, which required consideration of "all reasonable alternatives" (40 C.F.R. § 1502.14 (2018)), agencies were only required to consider "a reasonable number of examples, covering the full spectrum of alternatives." 46 Fed. Reg. 18,026, 18,027 (Mar. 23, 1981). The NEPA Rule simply clarifies that commonsense reading.[3]

Plaintiffs continue to insist that NEPA's hortatory preamble, directing agencies to comply with NEPA "to the fullest extent possible" (42 U.S.C. § 4332), governs the scope of alternatives that agencies must consider. But that reading of the statute is entirely implausible—as confirmed by the authorities Plaintiffs themselves cite, none of which actually read the statute that way. *See, e.g.*, *Nat. Res. Def. Council, Inc. v. Callaway*, 524 F.2d 79, 93 (2d Cir. 1975) ("[T]here is no need to consider alternatives of speculative feasibility or alternatives which could only be implemented

---

[3] Plaintiffs mis-quote our brief when they say that we claim that CEQ has authority to "interpret the word 'reasonable' broadly." Pls. Mem. 33 n.12. The statute does not include the word "reasonable," and we did not say otherwise; rather, CEQ has long held that the statute's bare reference to "alternatives" "*impl[ies]* that some reasonable range of alternatives suffices." Intervenors' Mem. 31 (emphasis added). By not defining the precise contours of this "reasonable range," the statute gives CEQ leeway to decide what is acceptable.

after significant changes in governmental policy or legislation or which require similar alterations of existing restrictions."); *Nat. Res. Def. Council, Inc. v. Morton*, 458 F.2d 827, 837 (D.C. Cir. 1972) (explaining that "[t]he statute must be construed in the light of reason" and does not require evaluation of alternatives "not meaningfully possible"); *Audubon Naturalist Soc'y v. U.S. Dep't of Transp.*, 524 F. Supp. 2d 642, 669 (D. Md. 2007) (explaining that an agency "need not consider an infinite range of alternatives, only reasonable and feasible ones") (quotation marks omitted).

For similar reasons, Plaintiffs' claim that the statute's preamble requires that agencies explore alternatives at a "rigorous[]" depth, or that they explain their consideration of alternatives at a certain length, is unfounded. Pls. Mem. 35. Courts have held that "the discussion of environmental effects of alternatives need not be exhaustive" and that "[w]hat is required" is simply "information sufficient to permit a reasoned choice of alternatives so far as environmental aspects are concerned." *Morton*, 458 F.2d at 836. Nothing in the NEPA Rule's language permitting agencies to "briefly discuss" certain alternatives, such as those "eliminated from detailed study" (40 C.F.R. § 1502.14(a) (2020)), contravenes that modest statutory requirement.

## CONCLUSION

The Court should grant the Business Associations' cross-motion for summary judgment.

Dated: March 17, 2021

Respectfully submitted,

/s/ *Michael B. Kimberly*

MICHAEL B. KIMBERLY*
JOSHUA D. ROGACZEWSKI
  *McDermott Will & Emery LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*
  *jrogaczewski@mwe.com*
  *mkimberly@mwe.com*

*Attorneys for Defendants-Intervenors*

*\*pro hac vice*

13

**CERTIFICATE OF SERVICE**

I certify that on March 17, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ *Michael B. Kimberly*
