**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA**

No. 3:20-cv-00045-JPJ-PMS

| | |
|---|---|
| WILD VIRGINIA, VIRGINIA WILDERNESS COMMITTEE, UPSTATE FOREVER, SOUTH CAROLINA WILDLIFE FEDERATION, NORTH CAROLINA WILDLIFE FEDERATION, NATIONAL TRUST FOR HISTORIC PRESERVATION, MOUNTAINTRUE, HAW RIVER ASSEMBLY, HIGHLANDERS FOR RESPONSIBLE DEVELOPMENT, DEFENDERS OF WILDLIFE, COWPASTURE RIVER PRESERVATION ASSOCIATION, CONGAREE RIVERKEEPER, THE CLINCH COALITION, CLEAN AIR CAROLINA, CAPE FEAR RIVER WATCH, ALLIANCE FOR THE SHENANDOAH VALLEY, and ALABAMA RIVERS ALLIANCE, | |
| Plaintiffs, | |
| v. | **PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION FOR REMAND WITHOUT VACATUR** |
| COUNCIL ON ENVIRONMENTAL QUALITY and MARY NEUMAYR IN HER OFFICIAL CAPACITY AS CHAIR OF THE COUNCIL ON ENVIRONMENTAL QUALITY, | |
| Defendants, | |
| AMERICAN FARM BUREAU FEDERATION, AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, AMERICAN FOREST RESOURCE COUNCIL, AMERICAN PETROLEUM INSTITUTE, AMERICAN ROAD & TRANSPORTATION BUILDERS ASSOCIATION, CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, FEDERAL FOREST RESOURCE COALITION, INTERSTATE NATURAL GAS ASSOCIATION OF AMERICA, and NATIONAL CATTLEMEN'S BEEF ASSOCIATION, | |
| Defendant-Intervenors. | |

Plaintiffs (the "Conservation Groups") hereby oppose the motion for remand without vacatur, Dkt. 145, submitted by Defendants Council on Environmental Quality ("CEQ") and Mary Neumayr[1] (together, the "Defendants").

By filing this motion, Defendants have waived their right to file a reply brief in support of their motion for summary judgment. Instead, Defendants ask this Court for what it already rejected: further delay of an adjudication of the illegal rulemaking that is actively harming the Conservation Groups. Because the lengthy delay Defendants again seek remains inappropriate, and because they have not satisfied the standard for a voluntary remand without vacatur, the Court should deny this request, adjudicate the fully briefed merits of this case, and vacate the 2020 Rule[2] to prevent further harm.

## I. This Court Has Already Determined That Delay of This Litigation Is Inappropriate

Last month, Defendants requested a stay of this litigation. *See* Dkt. 137. The Conservation Groups objected, noting the many ways in which the 2020 Rule is already being implemented for projects affecting the Conservation Groups. *See* Dkt. 138. This Court denied the request for a stay, noting that "adding lengthy additional delay" postponing the Court's judgment would "not be appropriate." Dkt. 139 at 2.

Nothing has changed since the Court's ruling. Projects continue to move forward under the illegal 2020 Rule, and the Conservation Groups continue to suffer harm. And CEQ's posture has not changed either. Although CEQ now acknowledges "substantial and legitimate concerns

---

[1] The Conservation Groups note that, pursuant to Federal Rule of Civil Procedure 25(d), they intend to substitute Mary Neumayr, who was sued in her official capacity, with her replacement at CEQ once a replacement Chair has been confirmed.

[2] Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43,304 (July 16, 2020) ("2020 Rule" or "the Rule").

1

with the 2020 Rule," Dkt. 145 at 7, it still has not committed to taking any action aside from reviewing the Rule, which is the same position it was in when it requested a stay of litigation last month. *Compare* Dkt. 145 at 4 (requesting remand because CEQ "is currently reconsidering the 2020 Rule as directed by EO 13990"), *with* Dkt. 137 at 2 (requesting a stay "to allow the new administration time to review the challenged agency action"). CEQ's equivocal promise that it "expects to decide in the coming weeks how to address . . . questions and substantial concerns [raised in this litigation], including whether to propose to amend or repeal the 2020 rule, in whole or in part," provides the Conservation Groups with no certain relief, but rather ensures they will continue to be harmed.

      A remand without vacatur would leave the challenged Rule in place—likely for years—while CEQ undertakes a new rulemaking (if it indeed decides to undertake a new rulemaking). This would deprive the Conservation Groups of their legal right to judicial relief. Just as with the motion to stay, Dkt. 137 at 2, 4, Defendants rely on President Biden's broadly-worded Executive Order,[3] and blithely suggest that instead of a ruling from this Court, the Conservation Groups should initiate myriad new piecemeal challenges to each individual project where the Rule is harming them in an array of different District Courts throughout the United States. Dkt.145 at 2–3, 11. This would further injure the Conservation Groups, waste judicial resources, and risk inconsistent legal rulings throughout the country.

      The Court should deny Defendants' motion for remand without vacatur for the same reasons it denied their motion for stay—the ongoing harms of leaving the Rule in place indefinitely are too great. As the D.C. Circuit explained, a voluntary remand in one environmental case was unacceptable because "EPA made no offer to vacate the rule; thus

---

[3] Executive Order No. 13,990, 86 Fed. Reg. 7,037 (Jan. 25, 2021).

EPA's proposal would have left [the challengers] subject to a rule they claimed was invalid." *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000). The same is true here.

## II. CEQ Fails to Meet the Standard for Remand Without Vacatur

The Administrative Procedure Act ("APA") requires that courts must "hold unlawful and *set aside*" agency action that is not in accordance with law. 5 U.S.C. § 706(2)(A) (emphasis added). Thus, it is standard that a court reviewing a challenge to agency action must vacate the action if it is found illegal. *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003).

The D.C. Circuit established a narrow exception for when a court may remand a challenged agency action without vacatur in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993). An agency opposing vacatur bears the equitable burden of meeting a two-part test for this unusual and disfavored remedy. First, the agency must address "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)"; a remand without vacatur is appropriate only in cases where a rule was merely "inadequately supported" and there is "at least a serious possibility that the [agency] will be able to substantiate its decision on remand." *Id.* at 150–51. Second, the agency must address the "disruptive consequences of an interim change that may itself be changed," *id.* at 150.

The Fourth Circuit discussed the matter recently in *Sierra Club v. U.S. Army Corps of Engineers*, 909 F.3d 635, 655 (4th Cir. 2018). Referencing *Allied-Signal* without fully embracing *any* exception for remand without vacatur, it noted that "remand without vacatur principally is relevant in matters where agencies have 'inadequately supported rule[s]'" and not for situations where the rule "exceeded statutory authority." *Id.* (quoting *Allied-Signal*, 988 F.2d at 150).

3

Defendants failed to cite this recent Fourth Circuit precedent or *Allied-Signal* in their motion, even though the two cases are the most relevant legal authority for this Court on this issue. Defendants thus waived their right to make new arguments on this standard in reply. *See, e.g.*, *Moseley v. Branker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008) ("As a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived."). More importantly, Defendants fail to meet either part of the two-part test. In fact, their motion and accompanying declaration make clear that remand without vacatur cannot be granted here.

### A. The Rule's Serious Deficiencies Are Incompatible with Remand Without Vacatur

Because remand without vacatur is only relevant for matters where agencies have "inadequately supported rule[s]" and not for situations where the agency "exceeded [its] statutory authority," it cannot be employed here. *Sierra Club*, 909 F.3d at 655 (quoting *Allied-Signal*, 988 F.2d at 150). As the Fourth Circuit noted, in situations where the issue is agency action "not in accordance with law," federal courts are obligated to "set aside" the unlawful agency action via vacatur. *Id.* Here, the Rule's serious and substantive violations of NEPA and the APA dictate that remand without vacatur is out of the question.

Likewise, "the extent of doubt whether the agency chose correctly" could not be greater here. *Id.* (quoting *Allied-Signal*, 988 F.2d at 150). The Rule violates the plain text of NEPA, its promulgation did not comport with the APA, and it is not supported by the Administrative Record. Indeed, even Defendants themselves have expressed grave doubts about the Rule in the declaration they filed with their motion. Dkt. 145-1. For all these reasons, there is no "serious possibility that the [agency] will be able to substantiate its decision on remand," and Defendants make no attempt to maintain that they would be able to do so. *Id.* (quoting *Allied-Signal*, 988

4

F.2d at 151). Thus, Defendants utterly fail to satisfy the first criterion for remand without vacatur, dooming their motion.

The fact that this challenge to the 2020 Rule involves "the scope of the [agency's] statutory authority" also makes a ruling on the merits important because the Court's ruling will provide important guidance to CEQ's ongoing and future implementation of NEPA; the scope of the statute "is intertwined with any exercise of agency discretion going forward," and accordingly Defendants' "last-minute request for a remand" should be denied. *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436–37 (D.C. Cir. 2018) ("*USWAG*").

Nonetheless, Defendants incorrectly attempt to rely on the *USWAG* decision for the proposition that the court need not "review[] a record that both sides acknowledge to be incorrect or incomplete." *Id.* at 436; Dkt. 145 at 9. But CEQ has not yet expressly confessed any error, so that reasoning is irrelevant. *See Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying "last second motion to remand" where "the Commission has not confessed error" and relied instead on a vague policy statement with uncertain application). Moreover, the portions of the rule that the D.C. Circuit remanded in *USWAG* presented an entirely different situation, because those portions of the rule stood "unchallenged on their merits," and an "opinion . . . regarding these provisions would [have] be[en] wholly advisory." *USWAG*, 901 F.3d at 438. The situation here is just the opposite: the entire 2020 Rule has been challenged. And the entire 2020 Rule is being implemented, and will continue to be implemented until vacated or modified via a new rulemaking.

Defendants' other cited cases are equally inapposite. For example, Defendants cite *Friends of DeReef Park v. Nat'l Park Serv.*, No. 13-cv-03453-DCN, 2015 WL 12807800, at *11 (D.S.C. May 27, 2015) for the proposition that agencies have authority to reconsider their

5

decisions. But in that case the court remanded without vacatur because the agency had made clear that it would remediate its error and the merits had not yet been fully briefed. *See* 2014 WL 6969680, at *4 (D.S.C. Dec. 9, 2014). Here, the opposite is true, the case has been fully briefed, and CEQ has made no commitment to do anything remedial whatsoever. Likewise, Defendants incorrectly rely on *The Last Best Beef, LLC v. Dudas*, 506 F.3d 333, 340 (4th Cir. 2007), which involved an agency request to cease processing trademarks while it cured legal defects in its rulemaking. But CEQ here is requesting the opposite: its motion asks that the illegal Rule *stay in place* and makes no commitment to cure any defect.

      Defendants' citation to *FBME Bank* does not assist them either. The court in that case had already put in place a preliminary injunction against the challenged rule, and, in requesting remand, the agency "recognize[d] that the Court has identified serious 'procedural concerns' with the Final Rule . . . and it agree[d] that the 'record . . . needs to be supplemented." *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70, 72, 73 (D.D.C. 2015). Here, by contrast, while acknowledging its "concerns," CEQ has not yet acknowledged any defects with the 2020 Rule. In addition, there has been no interlocutory ruling "that may guide future courts in similar cases and [CEQ's] own behavior in future rulemakings," *id.* at 74. And, most importantly, there is no injunction in place. Instead, CEQ is proposing to leave the Rule in effect for an indeterminate length of time, without the benefit of a ruling from this Court. This would leave the Conservation Groups subject to an invalid Rule. *See Chlorine Chemistry Council*, 206 F.3d at 1288.

      The motion and accompanying declaration make clear that remand without vacatur is not appropriate here. The 2020 Rule was not just "inadequately supported" but is contrary to law in multiple ways that cannot be cured via additional substantiation upon remand. *Allied-Signal*,

6

988 F.2d at 151. Defendants do not contend otherwise, and implicitly concede that the Conservation Groups' criticisms of the Rule's failure to consider environmental justice and climate impacts are correct, arguing that remand is necessary to give those issues due consideration. Dkt. 145-1 at 2. Defendants also note, for example, that CEQ has "substantial concerns about . . . the process by which the 2020 Rule was promulgated and the lawfulness of aspects of the 2020 Rule," *id.* at 7, including concerns about whether "the 2020 Rule is consistent with administrative law principles," whether it "improperly or unlawfully circumscribes the range of alternatives, long recognized by regulation and caselaw," whether it "improperly or unlawfully circumscribes the environmental effects," and whether it "improperly or unlawfully excludes certain actions from the definition of 'major federal action' for purposes of NEPA's applicability, or has the foreseeable effect of improperly excluding certain federal actions from review under NEPA." *Id.* at 5.

Given the extensive nature of these concerns, and the fact that they extend to both the substance of the Rule and the way it was promulgated, there is no "serious possibility" that CEQ will be able to substantiate the 2020 Rule on remand. *See Allied-Signal*, 988 F.2d at 151. Instead, the Court should dispose of this case through summary judgment and vacatur of the Rule, following the longstanding APA requirement to "hold unlawful and set aside" agency action that is not in accordance with law. 5 U.S.C. § 706(2)(A).

**B. Remand Without Vacatur Would Have Disruptive Consequences Across the Nation**

Remand without vacatur is only appropriate where the "disruptive consequences of an interim change that may itself be changed," *Allied-Signal*, 988 F.2d at 150, justify leaving the rule in place for a short period while the agency further explains or substantiates the rule on remand. Here, a decision to follow the standard course of remanding and vacating the unlawful Rule will have few to no disruptive consequences. Upon vacatur, the 1978 NEPA regulations

will once again be in effect, a time-tested regulatory regime that federal agencies have more than forty years of experience implementing (and that courts have more than forty years of experience interpreting and adjudicating). Given the unlawful regulation only took effect in September 2020, federal agencies will not experience significant disruptions and projects will not suffer significant delays by reverting to the 1978 regulations.

By contrast, the consequences of a remand that would leave in place an illegally promulgated Rule for several years while the current administration undertakes to replace it with yet another regulatory regime (if that is what it decides to do) could not be more disruptive. Without vacatur, the Rule will stay in place for the foreseeable future and more than one hundred federal agencies will need to conduct conforming rulemakings as mandated by the Rule. *See* 40 C.F.R. § 1507.3(b) (requiring all agencies to revise their own NEPA regulations by September 2021). Meanwhile projects across the nation—from highways, to pipelines, to new airports, to forest plans—will proceed under the Rule's deficient requirements, *id.* § 1507.3(a).

Federal agencies that will be subject to the legal requirements of the 2020 Rule, but also governed by an administration that has made clear its concerns the Rule is both illegal and inconsistent with its policy goals, (Dkt 145-1), will be unclear how to proceed. Those harmed by the defective evaluation of projects affecting them will be forced to individually challenge these applications of the Rule's requirements throughout the federal court system. The public will be deprived of information and opportunities to participate, and when given the chance to comment, community members will be held to an impossibly high technical standard for their concerns to be considered. In other words: chaos will abound.[4]

---

[4] *See, e.g.*, Expert Declaration of Nicholas Yost, Dkt. 30-55, ¶ 25 ("The many changes involved [in the 2020 Rule] are likely to lead to legal turmoil across the country as each new definition and change is litigated and as implementing agencies struggle to understand and interpret the

8

Defendants repeatedly state that they "expect[] to decide" whether to amend or repeal the Rule "in the coming weeks." Dkt. 145 at 5, 8, 9. This vague timeframe is a red herring. While Defendants may (or may not) decide to *initiate* a new rulemaking process to reconsider the challenged Rule within the next several weeks, the rulemaking process that would follow would take many months or, more likely, years. By way of example, the (extremely inadequate) rulemaking process that led up to the promulgation of the challenged 2020 Rule took nearly three years to complete.[5] CEQ received more than 12,500 comments in response to the 2018 Advance Notice of Proposed Rulemaking[6] and 1,145,571 comments in response to the 2020 Notice of Proposed Rulemaking.[7] *See* Rulemaking Docket, https://www.regulations.gov/docket/CEQ-2019-0003 (last visited March 22, 2021). If the 2020 Rule is remanded without vacatur, it would remain in place during the entire time it takes to complete a new rulemaking process.

The D.C. Circuit has held that under the *Allied-Signal* test, vacatur should be considered disruptive "if it set[s] back achievement of the environmental protection required" by statute. *Natural Res. Def. Council v. EPA*, 489 F.2d 1364, 1374 (D.C. Cir. 2007). Here, the purpose of

---

new meanings.").

[5] The previous rulemaking, which was done on an expedited schedule with only minimal time for public comment, took nearly three years to complete, measured from Executive Order 13,807, directing CEQ "enhance and modernize" the review process, to publication of the final Rule. *See* Exec. Order 13,807, 82 Fed. Reg. 40,463 (Aug. 24, 2017); Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 43,304 (July 16, 2020); *see also* Initial List of Actions to Enhance and Modernize the Federal Environmental Review and Authorization Process, 82 Fed. Reg. 43,226 (Sept. 14, 2017) (CEQ notice that it would review and update the NEPA regulations in response to Executive Order 13,807).

[6] Update to the Regulations for Implementing the Procedural Provisions of the National Environmental Policy Act, 83 Fed. Reg. 28,591 (June 20, 2018).

[7] Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act, 85 Fed. Reg. 1,684 (Jan. 10, 2020).

NEPA to "promote the improvement of environmental quality to meet the conservation, social, economic, health, and other requirements and goals of the Nation," 42 U.S.C. § 4344(4), is well established. *See also id.* § 4331. Leaving in place the deficient evaluation process created by the 2020 Rule will significantly set back these environmental protection goals, as the Conservation Groups have documented at length in briefing. *See, e.g.*, Dkt. 105-1 at 35–40; *see als*o Expert Declaration of Christy Goldfuss, Dkt. 30-54, ¶ 1 (the 2020 Rule will "cause confusion and bureaucratic inefficiency, resulting in worse project outcomes and more delays than if the rule had not been implemented"). CEQ, despite detailing its myriad concerns about the Rule and its impact on climate change and environmental justice, has done nothing to address these harms. *See* Dkt. 145 at 4–5.

CEQ's claim that a remand without vacatur would conserve resources, Dkt. 145 at 9, also rings hollow. The Court is already familiar with the issues in this case, the merits are fully briefed, and the Court has set a hearing date on the pending motions for summary judgment. The most efficient path forward is for the Court to rule on the merits. *See, e.g.*, *Black Warrior River-Keeper, Inc. v. EPA*, No. 2:19-CV-00344-JHE, 2019 WL 5864138, at *3 (N.D. Ala. Nov. 8, 2019) (denying motion for remand without vacatur on the eve of summary judgment). Doing so will both resolve the legality of the Rule that currently governs all NEPA evaluations taking place throughout the United States, and provide important guidance to CEQ on the requirements of NEPA and the APA for any new rulemaking it may undertake in the coming years.[8] In addition, judicial vacatur of the Rule also would stop the requirement that by September 2021 all agencies must "develop or revise, as necessary, proposed procedures to implement the [Rule],

---

[8] Likewise, CEQ, which has no further briefs to file in this matter, will not be so overburdened by the litigation such that it cannot simultaneously take the administrative steps it wishes to engage in. Dkt. 145 at 2 (acknowledging that Defendants' motion for remand without vacatur was filed "in lieu of filing a reply in support of their cross-motion for summary judgment").

including to eliminate any inconsistencies with the [Rule]." 40 C.F.R. § 1507.3(b). If the Rule is not vacated, agencies will still be obligated to go through the lengthy and expensive process of temporarily updating their own internal procedures through additional rulemakings, only to have to change them again once CEQ completes its future rulemaking process. Vacating the Rule would restore the 1978 regulations and avoid this cumbersome process of promulgating and then undoing numerous additional agency rules.

### III. Remand Without Vacatur Will Harm the Conservation Groups

A remand without vacatur that leaves the challenged Rule in place while CEQ undertakes an open-ended reconsideration process will not preserve the Conservation Groups' resources (nor judicial resources) and instead will cause significant harm to the Conservation Groups and their members.

First, the Conservation Groups and their members are being harmed by the ongoing application of the Rule's watered-down requirements for NEPA analyses of important and environmentally-damaging projects, including by having to divert resources in response to the shortcomings in the new NEPA process. The Conservation Groups already established these facts in their opposition to Defendants' Motion to Dismiss, *see* Dkt. 77, which this Court subsequently denied. Dkt. 98.

In the time it would take to proceed with a new rulemaking process, the Conservation Groups anticipate that federal agencies will be initiating and conducting NEPA reviews for hundreds of projects, with no discretion to use anything other than the unlawful 2020 Rule. CEQ has not suggested otherwise, and indeed now admits, the Rule applies to "*any NEPA process begun after September 14, 2020*, and may be applied to any NEPA process begun *before* September 14, 2020*.*" Dkt. 145 at 2 (emphases added).

11

The Conservation Groups already presented the Court with examples of projects that are currently underway. *E.g.* Dkt. 138-1 (a non-exhaustive list of more than two dozen projects of concern). Defendants failed to address these concerns in their motion. Defendants did not acknowledge or reference the list of projects supplied by the Conservation Groups and made no attempt to rebut the Conservation Groups' claims of harm, or to deny that the listed projects are moving forward under the Rule's weakened requirements.[9] Moreover, the Conservation Groups do not know the extent to which other projects are proceeding without *any* NEPA review at all under the exemptions created by the 2020 Rule, because such projects need no longer be brought to the public's attention.

In addition to these direct harms, CEQ's proposal that the Conservation Groups "challenge individual NEPA processes taken under the 2020 Rule," Dkt. 145 at 11, would create a major litigation burden for both the Conservation Groups and the federal courts. A huge number of projects subject to the Rule affect the Conservation Groups and their members,

---

[9] To cite just a few examples, since the beginning of this litigation, the Conservation Groups have explained how inadequate review of the Mountain Valley Pipeline project in Virginia and West Virginia harms them. *See, e.g.*, Compl. ¶¶ 42–44, 159, 161, 376–79, 383; Dkt. 30-1 at 83, 84 n.202, 86, 90 n.210, 91 n.213; Chisholm Decl., Dkt. 30-35; Sligh Decl. ¶¶ 20–22, Dkt. 30-10; Young Decl. ¶ 12, Dkt. 30-16. This project continues to move forward and further NEPA review is imminent. Multiple major road projects are also slated for review this summer. *See, e.g.*, Permitting Dashboard, Nimmo Parkway Phase VII-B, https://www.permits.performance.gov/permitting-project/nimmo-parkway-phase-vii-b, *last accessed* March 20, 2021 (environmental assessment to be issued June 2021); Va. Dep't of Transp., Bowers Hill Interchange Improvements Study (March 2021), *available at* http://www.virginiadot.org/Projects/Hampton_Roads/asset_upload_file146_173858.pdf (notice of intent to begin NEPA process planned for May/June 2021, and assessment of impacts summer/fall 2021). And the U.S. Forest Service is engaged in a Programmatic Environmental Assessment that would authorize tree cutting and herbicide spraying virtually anywhere in the Nantahala National Forest—hundreds of thousands of acres of publicly owned lands—with no upper limit. Dkt. 138 at 6; Dkt. 138-1. The decision allows for significant cumulative impacts, but consideration of such impacts is foreclosed by the Rule. The Forest Service began its review in January and expects a decision this summer. *See* Forest Service, Schedule of Proposed Actions, http://data.ecosystem-management.org/nepaweb/current-sopa.php?forest=110811 (last visited March 23, 2021).

because the Conservation Groups work throughout the United States. Accordingly, the litigation burden of CEQ's proposed approach would be far greater—for this Court and the entire federal court system—than a ruling on the fully-briefed summary judgment motions in this case.

By contrast, a ruling by this Court on summary judgment imposes no meaningful burden on CEQ. In contrast to CEQ's cited case, *American Forest Resource Council v. Ashe*, 946 F. Supp. 2d 1 (D.D.C. 2013), summary judgment is fully briefed and all that remains is a hearing and a ruling by the Court. Moreover, in *American Forest*, the plaintiff had not "provided any concrete examples of projects impacted by the consultation requirement," and accordingly the court found the benefit of remand outweighed "abstract and speculative" costs to the plaintiff. *Id.* at 43–44. Here, by contrast, the Conservation Groups have provided numerous concrete examples of affected projects where the Rule's weakened NEPA analysis harms the groups and their members, and these harms far outweigh the CEQ's preference for avoiding a ruling— especially where it has provided nothing except the unsupported assertion that a ruling would somehow "interfere" with reconsideration. Dkt. 145 at 10. On the contrary, a ruling on the scope of NEPA and the requirements of the APA will provide important guidance to CEQ going forward. *USWAG*, 901 F.3d at 436–37 (ruling on scope of the statute "is intertwined with any exercise of agency discretion going forward"); *FBME Bank*, 142 F. Supp. 3d at 74 (court's ruling "may guide . . . [agency]'s own behavior in future rulemakings").

CEQ's reliance on *Makhteshim Agan of N. Am., Inc. v. NMFS*, 2019 WL 5964526 (D. Md. Oct. 18, 2019) is equally misplaced. In that case, the court rejected the plaintiffs' contention that remand without vacatur would cause them to continue suffering prejudice because the plaintiffs had not sought preliminary injunctive relief. By contrast, the Conservation Groups here have pushed for swift judicial relief at every possible opportunity, including a prompt

13

request for preliminary injunctive relief. *See, e.g.,* Dkt. 30. Summary judgment has been fully briefed and the Court is poised to move forward and decide whether the 2020 Rule is lawful now. CEQ will benefit from the Court's ruling on the merits of the 2020 Rule and the requirements of NEPA. And granting summary judgment in favor of the Conservation Groups would restore the well-settled 1978 regulations while CEQ evaluates a new rulemaking, providing a stable status quo for NEPA evaluations and a well-established legal baseline from which to move forward.

Finally, CEQ's citation to *Regional Management Corp.* is simply irrelevant, because the court there held that the issue was unripe. *Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999). This case is plainly ripe—as the Court has already ruled in denying the motion to dismiss. *See* Dkt. 98.

## IV. Vacatur Is the Only Appropriate Remedy

If this Court were to remand the Rule rather than issue a summary judgment ruling, it must do so *with* vacatur. Courts regularly vacate agency actions on voluntary remand. *See, e.g.*, *Sierra Club*, 909 F.3d at 641 (noting earlier voluntary remand with vacatur); *Sierra Club v. EPA*, 705 F.3d 458, 466 (D.C. Cir. 2013) (same); *Coal River Mountain Watch v. Republic Energy, LLC*, No. 5:18-CV-01449, 2019 WL 3798219, at *7 (S.D.W. Va. Aug. 12, 2019) (noting voluntary remand with vacatur by D.C. District Court). "Vacation of an agency action without an express determination on the merits is well within the bounds of traditional equity jurisdiction." *Ctr. For Native Ecosystems v. Salazar*, 795 F. Supp. 2d 1236, 1241–42 (D. Colo. 2011). Vacatur is appropriate here based on the "[1] seriousness of the [Rule's] deficiencies and [2] the absence of materially disruptive consequences." *Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 615 (D.C. Cir. 2017) (internal quotation marks and citation omitted); *accord Bldg. Indus.*

14

*Legal Def. Found. v. Norton*, 231 F. Supp. 2d 100, 104 (D.D.C. 2002) (evaluating these factors and remanding with vacatur).

The first factor is met because, as noted above in Section II(A), and in the extensive briefing already submitted to the Court (and as CEQ's own declaration appears to recognize), the 2020 Rule's numerous deficiencies are substantive and serious. *See Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165, 185 (D.D.C. 2008) (remand with vacatur where "the deficiencies in EPA's explanation strongly suggest that the agency failed to engage in reasoned decisionmaking . . . [and] EPA has not persuaded this Court that there is 'a serious possibility' that the agency would be able to offer an adequate explanation for the new definition on remand"). As to the second factor, far more nationwide disruption and harm would result from leaving in place the radically curtailed, unlawful 2020 Rule—which, as explained above in Section II(B), will result in ill-informed environmental decisionmaking, as well as requiring agencies to promulgate a host of new regulations conforming to the defective Rule—than from restoring the longstanding 1978 regulations while CEQ evaluates whether and to what extent a new rulemaking is needed. *See ASSE Int'l, Inc. v. Kerry*, 182 F. Supp. 3d 1059, 1065 (C.D. Cal. 2016) (remand with vacatur where seriousness of deficiencies was "fairly equivocal" but the "disruptive consequences that would result from vacatur [] weigh[ed] squarely" in favor of vacatur). Accordingly, while disposing of this case on summary judgment is the best course, any remand of this Rule must be accompanied by vacatur.

Respectfully submitted, March 25th, 2021.

SOUTHERN ENVIRONMENTAL LAW CENTER

/s/ Kimberley Hunter
N.C. Bar No. 41333
601 West Rosemary Street, Suite 220
Chapel Hill, NC 27516

15

khunter@selcnc.org
919-967-1450

/s/ Sam Evans
N.C. Bar No. 44992
48 Patton Ave, Suite 304
Asheville, NC 28801-3321
sevans@selcnc.org
828-258-2023

/s/ Nicholas S. Torrey
N.C. Bar No. 43382
601 West Rosemary Street, Suite 220
Chapel Hill, NC 27516
ntorrey@selcnc.org
919-967-1450

/s/ Megan Kimball
N.C. Bar No. 53837
601 West Rosemary Street, Suite 220
Chapel Hill, NC 27516
mkimball@selcnc.org
919-967-1450

/s/ Kristin Davis
VA. Bar No. 85076
201 West Main St, Suite 14
Charlottesville, VA 22902-5065
kdavis@selcva.org
434-977-4090

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 25th, 2021, I electronically filed the foregoing Plaintiffs' Opposition to Federal Defendants' Motion for Remand Without Vacatur with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing to all counsel of record.


/s/     Kimberley Hunter